## Clinton v. Hibbs' Executrix.

(Decided February 29, 1924.)

### Appeal from Livingston Circuit Court.

1.   Principal and Agent—Within Exclusive Province of Court to Construe Writte n Power of Attorney.—It was the exclusive province of the court to construe a power of attorney and to determine

therefrom the extent of the authority of the attorney in fact, the authority being in writing and its terms being neither ambiguous, obscure, nor inconsistent.

2. Husband and Wife—Wife as Attorney in Fact Held Not Authorized to Sign as Surety for Husband.—A power of attorney by husband, giving wife "authority to attend to all of my affairs, to sign checks, and also execute any notes that she may deem necessary in the conducting of my affairs, and to transact all of my business during my illness," did not authorize the signing of the husband's name on a note as surety for another, in view of Ky. Stats., sections 482.

3. Principal and Agent—Authority of Attorney in Fact to Bind Principal as Surety.—Even when there is express authority for an attorney in fact to bind his principal as surety, it is the policy of the law to construe it strictly and to hold the principal not bound, unless the authority is exercised within the undoubted limits prescribed.

4. Principal and Agent—Principal Not Estopped to Deny Liability as Surety, and Could Only Ratify by Writing—"Procuration."— A surety, whose name was signed to a note by an attorney in fact without authority, could not ratify his signature thereto except in writing, and, in the absence of such ratification, is not estopped to deny liability, especially in view of Ky. Stats., section 3720b-21, which provides that a signature by "procuration" operates as notice that the agent has but limited authority to sign; the word "procuration" meaning the act by which a principal gives power to another to act in his place as he could himself.

CHAS. H. WILSON for appellant.

C. C. GRASSHAM and L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 6, 1920, L. C. Hibbs, who was then a resident of Livingston county, executed a general power of attorney to his wife, Lula Hibbs, which was in these words: "I, L. C. Hibbs, being now infirm in health, and for that reason not being able to attend to my business affairs, do hereby appoint my wife, Lula Hibbs as my agent and attorney in fact, and give her full authority to attend to all of my affairs, to sign checks and also execute any notes that she may deem necessary in the conducting of my affairs, and to transact all of my business during my illness, also to collect all money that may be due me and to represent me in the partnership business in which I may be interested. This June 6,

1920. L. C. Hibbs." It was acknowledged and duly recorded in the Livingston county court clerk's office.

On September 10, of the same year, C. M. Nelson borrowed from the appellant and plaintiff below, J. L. Clinton, $2,000.00 and executed to him a note for that sum due twelve months thereafter and payable at the First National Bank at Paducah, Kentucky. Mrs. Hibbs, as attorney in fact for her husband, signed the name of the latter to the note as surety for Nelson, and which was written by her in these words: "L. C. Hibbs by Lula Hibbs, attorney in fact." There were other sureties to the note, but they and Nelson, the principal, were or have since become insolvent, and this action was filed by plaintiff against Nelson and the other two sureties, and against appellee and defendant below, Mrs. Lula Hibbs, as executrix of her husband, who in the meantime had died a resident of Livingston county, and prior thereto had executed his will in which he devised all of his property to his surviving wife and made her executrix thereof. Default judgments were taken against the defendants other than Mrs. Hibbs, as executrix of the will of her husband, but she filed answer denying liability of her husband on the note upon the ground that he was not a principal therein and that his name was signed thereto by her as his attorney in fact only for the purpose of binding him as surety thereon; that he received no part of the consideration therefor and that she as his attorney in fact, by whom his name was signed thereto, had no authority from him in writing to do so, and it was also averred that the above general power of attorney conferred no such authority upon her as the appointed agent of her husband therein. Those defenses were controverted by a reply, and it also pleaded facts which counsel claims constituted an estoppel against L. C. Hibbs, as well as his widow as his sole devisee, from denying her authority to bind her principal as surety in the note under the general power of attorney given her. Appropriate pleadings made the issues and upon trial, after evidence heard, the court sustained the motion of counsel for the executrix and peremptorily instructed the jury to return a verdict in her favor, which was done, and plaintiff's motion for a new trial being overruled he prosecutes this appeal from the judgment dismissing the petition as against the executrix.

It is argued for a reversal that the court erred (1), in assuming to construe the power of attorney when its construction, as claimed, should have been submitted to the jury; (2), that the court erred in construing it as not authorizing Mrs. Hibbs to sign the name of her husband to the note as surety, and (3), that the court erred in holding that the proven facts created no estoppel. -Other contentions were made in the motion for a new trial and to some extent argued in the brief, but we regard them as immaterial and of no consequence in view of the conclusions reached on the three contentions above enumerated, and which we will proceed to dispose of as briefly as possible.

In support of contention (1), reliance is had on the case of Meagher v. Bowling, 107 Ky. 412. The authority of the agent, who signed the name of his principal to the writing therein sued on, rested exclusively in parol. There was a dispute as well as contradictory evidence as to what that authority actually was, and the court very appropriately held that the issue of fact with reference thereto should be submitted to the jury under appropriate instructions, with directions, of course, for it to return a verdict in accordance with what it found to be the authority of the agent. It requires no argument to show that we have no such case here, since the authority of the agent is in writing and there is and could be no dispute as to its terms. They are neither ambiguous, obscure, nor inconsistent. Neither is there any reference to extraneous matters concerning which there is a contrariety of evidence, and there was, therefore, nothing to be submitted to the jury relating to the true interpretation of the power of attorney given by the deceased to his wife who is now his executrix, and the proper construction of it, under such circumstances, is exclusively a question for the court, under numerous opinions of this court, as well as under the accepted general doctrine as recorded by all text book writers upon the subject. 9 Cyc. 591-2; 6 R. C. L. 862; Elliott on Contracts, vol. 2, sections 1564-5; Lock and Ellison v. Lyon Medicine Co., 27 Ky. L. R. 1; Schuster v. Snauder, 31 Ky. L. R. 254; Lexington and Big Sandy Ry. Co. v. Moore, 140 Ky. 514; Vincennes Bridge Co. v. Walker, 181 Ky. 651; Crescent Stave Co. v. Brown and Millard, idem 787, and Texas Granite Oil Company v. Williams, 199 Ky. 146. It was, therefore, the exclusive province of the court in this case

to construe the power of attorney and to determine therefrom the extent of the authority of the attorney in fact, and to have declined to do so and submit such matters to the jury would have been error.

The first thing to be observed in the discussion of contention (2) is that the power of attorney by its express terms gave to the wife "authority to attend to all of my (the principal's) affairs, to sign checks and also execute any notes that she may deem necessary in the conducting of my (his) affairs, and to transact all of my business during my illness," with some additional powers relating to the collection of money and representing her husband in any partnership business in which he may be interested. Her authority was thereby limited to the doing of such things and the performance of such acts as were necessary to the conducting of the business affairs of her husband, and manifestly did not include the signing of his name as surety for another. Her authority was general but limited to the matters mentioned in the power of attorney; and which conclusion is so self-evident to our minds as to leave no room for discussion, or any support for any other interpretation. Such an authority can not be extended beyond the fair meaning of the words conferring it, and in discussing the question, the text in 21 R. C. L. 884 says: "However, the authority of an agent to make or indorse promissory notes under a letter of attorney 'to take the general control and management of' the principal's 'affairs, business and property,' to perform all acts connected therewith, including the execution, indorsing and paying of promissory notes; and generally to 'do every act, matter or thing which the nature of said business shall require,' is restricted to such notes as are necessary in conducting and managing the principal's business." To the same effect is the text in 2 Corpus Juris, 643-5, which contain a discussion of the extent of authority of a general agent appointed to manage the business of a principal, and in the course of the discussion it is said on the last page referred to: "Nor has such an agent implied power, unless it is necessary to the performance of his agency, to purchase property, to borrow money, to execute or indorse negotiable instruments, to engage his principal in new and different enterprises, or to run the business on the agent's own account. A managing agent ordinarily cannot bind his principal as surety for third

persons.'' Numerous cases are cited in the notes to the text of each publication, and we have been cited to no authority to the contrary, nor have we been able to find any after most diligent research. Even when there is express authority for the agent to bind his principal as surety, it is the policy of the law to construe it strictly, and to hold the principal not bound unless the authority is exercised within the undoubted limits prescribed by the principal. Corpus Juris, *supra*, 666.

We, therefore, deem it unnecessary to pursue the discussion of this phase of the case any further, since we are convinced that the power of attorney given by Mr. Hibbs to his wife did not and could not under any recognized rules of interpretation authorize her to subscribe his name to the note of another as surety. It is not shown, even if that had been a relevant fact, that any part of the proceeds of the note sued on discharged any debt going to the decedent or any obligation for which he was theretofore liable. On the contrary it is proven that such proceeds were consumed in discharging the personal debts of the principal in the note and for none of which was Mr. Hibbs liable as surety or otherwise. Under the provisions of section 482 of our present statutes which was enacted prior to our present Negotiable Instruments Act, the authority of an agent to sign the name of his principal as surety to a note must be in writing, and under the latter act, enacted since the section referred to (section 3720b-19 of the present statutes), it is said: ''A signature of any party (to a negotiable instrument) may be made by an agent duly authorized in writing.'' In construing that section in the cases of Finley v. Smith, 165 Ky. 445, and Inter-Southern Life Insurance Co. v. First National Bank, etc., 178 Ky. 95, we held that section of the Negotiable Instruments Act as mandatory and construed the word ''may'' therein as equivalent to ''must,'' so that now no person's name to a negotiable instrument, whether as principal, surety, endorser or otherwise, signed or written by his agent, will bind him unless the agent's authority to do so is in writing. It is not pretended that Mrs. Hibbs possessed any written authority to bind her husband as surety on the note sued on except that given her by the power of attorney, which, as we have seen, was insufficient for that purpose, and it is therefore clear that neither her husband, nor his estate since his death, is bound thereon,

which conclusion brings us to a consideration of the last contention (3).

The name of the decedent on the note was signed by Mrs. Hibbs, as his attorney in fact, in the office of the City National Bank, in Paducah, Ky. Mr. Hibbs and C. M. Nelson were present, but plaintiff was not present and the note as so signed was afterwards delivered to him by Nelson. Neither Mr. nor Mrs. Hibbs, so far as the record shows, ever spoke to plaintiff about their hav-- ing done so, and he accepted it on its face as it was signed and executed in his absence. No act, word or conduct of either Mr. or Mrs. Hibbs, save and except the mere fact of the signature, was ever made, done or spoken to the plaintiff as an inducement for him to accept the note, and it is difficult for us, under such circumstances, to see wherein anything resembling an estoppel was created. If, however, the record disclosed facts, which ordinarily would amount to a ratification, it would not avail plaintiff in this case since this court held in the cases of Ragan v. Chenault, 78 Ky. 545, and Riggan v. Crain, 86 Ky. 249, that a surety whose name was signed to the note by an orally authorized agent and who was not bound on the note, could not ratify his signature thereto except in writing, and there is no pretense in this case of any writing having been made by Mr. Hibbs after the execution of the note which could be construed either as a ratification or as an estoppel. Moreover, section 3720b-21 of our present statutes, which is a part of the Negotiable Instruments Act, says that "A signature by 'procuration' operates as notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent in so signing acted within the actual limits of his authority." The word "procuration," as therein used and as defined by law lexicographers, means "The act by which a principal gives power to another to act in his place as he could himself;" and Mr. Anderson, in his Law Dictionary, defines it as "Acting as agent for another, agency, proxy."

The note in the instant case showed on its face that the signature of Mr. Hibbs as surety thereon was by "procuration" and gave notice to the plaintiff of the limitations of the authority of Mrs. Hibbs, by·whom it was made. He, therefore, not only possessed from such fact presumptive notice of such limitations on her authority, but he also had constructive notice arising from the recording of the power of attorney in the office

of the county court clerk of Livingston county. He, therefore, accepted the note with attributed knowledge that Mrs. Hibbs exceeded her authority in signing her husband's name to it as surety, and he is in no attitude to complain of any of the alleged estoppel facts in avoidance thereof. Indeed, if such estopping facts could be given the effect contended for in this case, then in every case the surety would be rendered liable where he had knowledge that his agent in executing the note had exceeded his authority; and the cases would be rare indeed where the mandatory provisions of the statute requiring the agent's authority to be in writing could be enforced.

It is our conclusion, therefore, that the court correctly directed a verdict in favor of defendant, since from whatever view point we consider the facts in the case we come out at the same door over which is inscribed "No Liability Here." Wherefore, the judgment is affirmed.