[APRIL TERM, 1933]

LUIKART v. BOLAND, ET AL.
(No. 1723; May 2, 1933; 21 Pac. (2d) 542)
(Rehearing denied June 13, 1933)

For the appellant there was a brief by *A. C. Allen* and *O. N. Gibson,* of Riverton, Wyoming, and oral argument by *Mr. Allen.*

For the respondents, the cause was submitted on the brief of *G. J. Christie,* of Lander, Wyoming, without oral argument.

464

Blume, Justice.

This is an action to set aside certain conveyances made by Edintha H. McLaughlin as fraudulent. There was a judgment for defendants, from which the plaintiff has appealed.

The case was tried and is appealed here upon the theory that the Farmers State Bank of Riverton was defrauded by the conveyances in question. Its claim was filed with and allowed by the plaintiff, the administrator of the estate of Edintha H. McLaughlin, and arises out of the following facts: On January 10, 1920, the Riverton Construction Company made and delivered to the bank two promissory notes of $5000 each, due six months after date. On February 6, 1920, an instrument, purporting to be signed by J. A. Delfelder, N. G. Petrie and E. H. McLaughlin (being the same person as Edintha H. McLaughlin), was executed, by which the signers "for and in consideration of the advancing to the Riverton Construction Company of the sum of $10,000" as evidenced by the two promissory notes above mentioned, guaranteed the payment of these notes. Thereafter on April 20, 1920 the Riverton Construction Company made and executed a further note to the bank for the sum of $7487.96, due on demand, which was endorsed by "J. A. Delfelder, N. G. Petry, W. J. McLaughlin, E. H. McLaughlin" for the accommodation of the principal maker of the note. The greater part of these notes is still unpaid. It is agreed that Mrs. McLaughlin did not personally sign the notes, but that her signature on the notes was actually written by W. J. McLaughlin, and it is claimed that he had authority to do so by reason of a certain power of attorney which is hereinafter more specifically set out. The petition alleges that at the time of the guaranty and endorsements above mentioned Mrs. McLaughlin was the legal owner and in lawful possession of the property in controversy; that thereafter, during 1920, and before her death, she

conveyed the same away by the conveyances herein attacked, conveying separate portions to her three daughters, and conveying her interest in certain oil lands to Elizabeth Norris; that all of these conveyances were without consideration and made with intent to dispose of all of her property with a view of avoiding administration of her estate and to prevent her property from being subjected to the claims of her creditors. It appears that Mrs. McLaughlin died on June 4, 1920. She had, previous to the time of the execution of the conveyances heretofore mentioned, made a will, but that is immaterial herein and need not be further considered.

There is some argument made herein on behalf of the appellant to the effect that the property in controversy was in fact all owned by W. J. McLaughlin, husband of the deceased, and that he held the property in the name of his wife and children because of the fact that he had certain judgments standing against him, in favor of the estate of one Catherine McGinnis, the payment of which he attempted to avoid. The property in controversy, however, was apparently acquired by Mrs. McLaughlin as early as 1916 or the early part of 1917, while the notes in controversy were not executed until 1920, so that the bank would in any event be a subsequent creditor, if a creditor at all. Generally speaking, such creditors cannot complain of conveyances or transfers made prior to the time that they extended credit. 27 C. J. 474. There are exceptions to the rule. 27 C. J. 521, 555. But we need not inquire whether or not there is any evidence in this case to make these exceptions applicable to transfers made by W. J. McLaughlin. This is not an action to set aside transfers made by him, but to set aside conveyances made by Mrs. McLaughlin, and of property which, according to the petition, was owned by her in fee. And the first thing necessary, in order that the bank, or the administrator in its behalf, may attack the conveyances in question is,

of course, that it should be a creditor of her estate. 27 C. J. 470, 471. If it is not, it is unnecessary to go into other questions raised herein. The bank claims that it is such creditor by reason of the accommodation guaranty and endorsement of the notes already mentioned, and that the name of the deceased was authorized to be placed thereon by W. J. McLaughlin, by virtue of the following power of attorney, which was in the possession of the bank, at the time that the guaranty and the endorsement were executed:

"KNOW ALL MEN BY THESE PRESENTS: That I, Edintha H. McLaughlin of the County of Fremont and State of Wyoming, for the purpose of more convenience in the handling of my affairs and having perfect trust and confidence in W. J. McLaughlin, my husband, do by these presents make, constitute and appoint the said W. J. McLaughlin, of the County of Fremont and State of Wyoming, as my true and lawful attorney in fact, to act for me and in my name, place and stead, with full power of substitution, to sign for me and in my name, notes, deeds, releases and contracts, to indorse for me and in my name all checks, notes and bills of exchange and in fact to sign my name and to act for me in all matters as I might do were I personally present.
IN WITNESS WHEREOF, I have hereunto set my hand and seal this 4th day of November 1919.
Edintha H. McLaughlin."

Mrs. McLaughlin was a housewife, and it does not appear that she was in any way whatever interested in the Riverton Construction Company, or its affairs, or that she had any interest in the execution of the guaranty or endorsement above mentioned. The question then is, as to whether or not the power of attorney authorized W. J. McLaughlin to sign her name as above stated. It is the policy of the law to construe powers of attorney strictly, and to hold the principal not bound unless the authority is exercised within the undoubted limits prescribed by

the principal. Clinton v. Hibbs, 202 Ky. 304, 259 S. W. 356, 35 A. L. R. 462; Massachusetts Bonding and Ins. Co. v. Nichols, 117 Nebr. 93, 219 N. W. 837; 21 R. C. L. 881, 882. And a general grant of power ordinarily implies that it must be exercised in connection with the principal's business and for his use and benefit. Thus it is said in 2 C. J. 558:

"A power of attorney to act generally in the name and on behalf of the principal must, in the absence of anything showing a different intention, be construed as giving authority to act only in the separate individual business of the principal and for his use."

Again in 2 C. J. 641, it is said:

"In the absence of anything to show a different intention the power to make or indorse commercial paper will be construed as extending to bills, notes, drafts, executed or indorsed in the business of the principal and for his benefit. The broadest possible authority to make and indorse paper, presumptively is to be exercised in the principal's business only, and does not impliedly extend to making or indorsing paper for the accommodation of third persons, and still less for the agent himself."

In Clinton v. Hibbs, supra, power was given to sign checks and notes deemed necessary to be signed in connection with the affairs of the principal and to transact all of the latter's affairs. It was held that this did not include the right to sign the principal's name as surety on a note. In Camden Safe Deposit & T. Co. v. Abbott, 44 N. J. L. 257, the power of attorney was as follows: "This is to certify that J. R. Abbott * * * is this day appointed with power of attorney, and authorized by me to sign my name to any paper or papers, notes, etc." It was held that this gave no authority to sign a note for the benefit of the agent. In Wallace v. The Branch Bank at Mobile, 1 Ala. 565, the agent was given authority "for the plain-

tiff and in his name to draw or indorse promissory notes, etc." It was held that the authority to do so *for* the principal, did not include the power to do so *for* the accommodation of third persons. In Stainer v. Tysen, 3 Hill. 279, the power was broad and sweeping in some respects, not by its terms limited to the principal's business, granting authority "to draw and to endorse checks, notes, bills of exchange in my name." A note given partially for the agent's benefit was held unauthorized, and it was held that a naked power to do acts for and in the name of the principal negatives all authority on the part of the attorney in fact to act for the benefit of anyone except the principal. In the case of New York Life Insurance Co. v. Daley, 25 Cal. App. 376, 143 Pac. 1033, the principal gave power "for me and in my name, place and stead, and for my use and benefit * * * to make, do and transact all and every kind of business of what nature and kind soever, and also for me and in my name and as my act and deed, to sign, seal, execute * * * such other instruments in writing of whatsoever kind and nature as may be necessary or proper in the premises." The principal was named as a beneficiary in a policy of insurance, which, however, contained a clause authorizing a change. The agent signed a note on behalf of the principal for a premium that became due. It was held that even under these circumstances the agent had no authority to execute the note, since, in view of the clause giving power of changing the beneficiary, the note was not for the use and benefit of the principal. In fact the cases decided in the United States on this subject seem to be in complete harmony, and similar in effect to the cases already cited. Numerous ones are collected in note to 35 A. L. R. 267, where the author states:

"A general power of attorney authorizing the making, drawing or indorsement of negotiable paper in the principal's name will be construed as confining the authority

of the attorney to the transaction of the defendant's (principal's) business only, and does not include authority to make, draw, or indorse negotiable paper for the benefit and accommodation of any other person.''

To the same effect are Ozburn v. Morris, 22 Ga. App. 325, 95 S. E. 1019; Mechem on Agency (2nd Ed.), Sec. 976, and numerous cases cited; Daniels on Neg. Inst. (5th Ed.), Sec. 292-3.

Counsel for the appellant seem to think that the power of attorney is broader than those mentioned in the other cases on the subject. We do not think so. The instrument clearly states that it is given for the purpose of more convenience in the handling of the principal's affairs, not the affairs of some one else. Again and again Mrs. McLaughlin states therein that whatever is done shall be done for her, which excludes the thought that it should be done for the benefit and accommodation of some one else; thus the power of attorney gives authority to ''act *for me* * * * to sign *for me* * * * and to act *for me*.'' Nowhere appears any indication that a guaranty or indorsement was authorized for the accommodation of the Construction Company or anyone else. The bank, which had the power of attorney in its possession, was bound to take notice of the limited authority possessed by the agent. Clinton v. Hibbs, supra; Stainer v. Tysen, supra.

It is clear, we think, that W. J. McLaughlin was given no authority to sign the name of Edintha H. McLaughlin to the guaranty and endorsement in question. Hence she did not thereby become the debtor of the bank, and the judgment of the trial court must, accordingly, be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.