THE NATIONAL CITY BANK OF ST. LOUIS, a Corporation, v. CARLETON DRY GOODS COMPANY, a Corporation, Appellant.—67 S. W. (2d) 69.

Division Two, December 20, 1933.

*Smith & Pearcy, Thompson, Mitchell, Thompson & Young* and *Curlee & Teasdale* for appellant.

342

*Foristel, Mudd, Blair & Habenicht* for respondent.

WESTHUES, C.—Respondent, plaintiff below, filed a petition in the Circuit Court of the City of St. Louis, Missouri, against appellant, a corporation, to recover the balance due on four notes aggregating $100,000, signed by the Ferguson-McKinney Manufacturing Company, also a corporation, by its president, Forrest Ferguson. Upon a trial before a jury plaintiff secured a verdict and judgment in the sum of $63,938.66. From this judgment defendant, Carleton Dry Goods Company, appealed.

Appellant challenged the sufficiency of respondent's petition at all stages of the proceedings and asserts in this court that the petition does not state facts sufficient to constitute any cause of action against appellant. We will, therefore, embody the petition in our opinion. It reads as follows:

"Plaintiff, for its amended petition, by leave of Court, filed herein, states that it is, and was at all times hereinafter mentioned a banking corporation, organized and existing under and by virtue of law,

doing business in Missouri, with an office, bank and place of business in the City of St. Louis, Missouri, and as such at all times herein mentioned, and for many years immediately prior thereto, was engaged in the general banking business in the said City of St. Louis, Missouri, and as such banking corporation was engaged in the business of lending money, all of which the defendant well knew.

"Plaintiff further states that defendant, Carleton Dry Goods Company, is, and was at all times hereinafter mentioned, a corporation, duly organized and existing under and by virtue of law, doing business in Missouri, with an office and place of business in the City of St. Louis, Missouri, and as such at all times hereinafter mentioned engaged in the wholesale and retail dry goods business in the City of St. Louis, Missouri; that at all times herein mentioned the Ferguson-McKinney Manufacturing Company was a corporation, duly organized and existing under and by virtue of law, doing business in Missouri, with an office, factory and place of business in the City of St. Louis, Missouri, and as such at all times hereinafter mentioned engaged in the business of manufacturing and selling dry goods.

"Plaintiff further states that at all times herein mentioned one Murray Carleton was a stockholder and director of the defendant, Carleton Dry Goods Company, and a stockholder and director of the Ferguson-McKinney Manufacturing Company, and at all times herein mentioned was the president, and acting as such, of the defendant, Carleton Dry Goods Company, and the treasurer, and acting as such, of the said Ferguson-McKinney Manufacturing Company, and in addition to being such stockholder, director and officer, as aforesaid, of said corporations, was, during all the times herein mentioned, in charge and control and management of both of said corporations.

"Plaintiff further states that for a great number of years prior to February 28, 1925, the said corporation, Ferguson-McKinney Manufacturing Company, in the conduct of its business affairs, was accustomed to borrowing money from various banks and banking corporations in the City of St. Louis and elsewhere, and more particularly from the plaintiff; that in the process and method of borrowing money for the purpose aforesaid, the said Ferguson-McKinney Manufacturing Company, during all of said time, would furnish to the plaintiff and said banks and banking corporations a financial statement or balance sheet showing the financial condition of said corporation, Ferguson-McKinney Manufacturing Company, as the basis for the loan of money and the extension of credit, all of which the defendant Carleton Dry Goods Company at all times well knew.

"Plaintiff further states that, beginning on or about the 10th day of October, 1923, and until the 28th day of February, 1925, and from thence hitherto, the defendant Carleton Dry Goods Company, in the name of Carleton-Ferguson Dry Goods Company, a subsidiary

company of the defendant Carleton Dry Goods Company, controlled and managed by the said Murray Carleton, at various times and on divers occasions, advanced to the said Ferguson-McKinney Manufacturing Company various large sums of money, aggregating more than $1,251,000, for which said sums so advanced to it by the defendant Carleton Dry Goods Company the said Ferguson-McKinney Manufacturing Company, on the said 28th day of February, 1925, was justly indebted to the defendant Carleton Dry Goods Company on a balance in the sum of $1,251,000, all of which said money was advanced by the defendant Carleton Dry Goods Company to the said Ferguson-McKinney Manufacturing Company and received and accepted by it by and through the said managing agent and officer, said Murray Carleton, of both of said companies, as aforesaid; that on or about the said 28th day of February, 1925, the said Ferguson-McKinney Manufacturing Company, for the purpose of borrowing money from plaintiff and other banks and banking corporations, did, by and through its said officer, agent and manager, Murray Carleton, prepare or caused to be prepared a balance sheet and financial statement, wherein the business and financial condition of the said Ferguson-McKinney Manufacturing Company was falsified, for the purpose of deceiving the plaintiff and other banks and banking corporations, as to the true financial condition of the said Ferguson-McKinney Manufacturing Company and for the purpose of defrauding the plaintiff and other banks and banking corporations out of large sums of money by inducing the plaintiff and other banks and banking corporations to lend money and extend credit to the said Ferguson-McKinney Manufacturing Company, which said falsified balance sheet and financial statement is of the tenor following, to-wit:

"Ferguson-McKinney Manufacturing Company,

St. Louis, Missouri.

Balance Sheet—February 28, 1925.

Assets.

| | |
|---|---:|
| Cash | $ 144,812.81 |
| Notes receivable | 24,950.63 |
| Due from customers, exclusive of doubtful accounts written off | 1,603,621.64 |
| Inventories (company's valuation, based on physical inventory and lower of cost or market; not verified as to quantities) | 1,551,924.53 |
| Securities owned | 329,940.00 |
| Deferred debit item—prepaid interest | 16,485.47 |
| Good will | 998,000.00 |
| Total | $4,669,735.08 |

"Liabilities.

Notes payable ........................$1,595,000.00
Accounts payable .....................    71,216.79
Dividend—Payable March 1, 1925 ......    17,500.00
Reserve for federal and state taxes ......    35,000.00
Reserve for contingencies ............   150,000.00
Capital:
  Capital stock:
    Preferred, 7% cumulative (dividends
      paid to February 28,
      1925 ..............$1,000,000.00
    Common ............. 1,500,000.00 $2,500,000.00
Surplus ..............................301,018.29   2,801,018.29
        Total .............................             $4,669,735.08

"Certificate of Audit.

"We have audited the accounts representing the assets and liabilities of the Ferguson-McKinney Manufacturing Company as of February 28, 1925; have tested the computations and prices of ‧the merchandise inventory taken by the company as of that date and valued at the lower of cost or market, and

"We hereby certify that, in our opinion, the above balance sheet correctly sets forth the company's financial condition as at the date stated.

"Mitchell & Simson,

"Members of American Institute of Accountants.

"New York, March 20, 1925.

"That on said 28th day of February, 1925, and when said balance sheet or financial statement was prepared or caused to be prepared, as aforesaid, the said Ferguson-McKinney Manufacturing Company was justly and truly indebted to the defendant Carleton Dry Goods Company for said balance of money so advanced, as aforesaid, in the said sum of $1,251,000, which said indebtedness in the said sum of $1,251,000 was knowingly, intentionally and fraudulently, for the purpose of deceiving banks and banking corporations, particularly plaintiff, to whom the said Ferguson-McKinney Manufacturing Company intended to apply, and did thereafter apply, for a loan of large sums of money, as to the true financial condition of the business and financial affairs of said Ferguson-McKinney Manufacturing Company, omitted from said financial statement and not shown thereon as a liability of said Ferguson-McKinney Manufacturing Company, all of which the defendant well knew.

"And plaintiff further states that thereafter and on or about the 31st day of July, 1925 the said Ferguson-McKinney Manufacturing Company made application to the plaintiff for the loan of large sums

of money and the extension of credit in the sum and to the amount of $100,000, and did furnish and deliver to the plaintiff, as the basis of said loan and the extension of said credit, the said falsified balance sheet and financial statement, with the said indebtedness and liability in the sum of $1,251,000 to the defendant Carleton Dry Goods Company omitted therefrom and not shown thereon, and that the said Ferguson-McKinney Manufacturing Company and the defendant Carleton Dry Goods Company, both well knowing said facts and the said falsified condition of said balance sheet and financial statement, did not inform the plaintiff of the said liability and indebtedness of the said Ferguson-McKinney Manufacturing Company to the defendant, but concealed said liability and indebtedness of the said Ferguson-McKinney Manufacturing Company from the plaintiff; that the plaintiff, relying on said balance sheet and financial statement and believing the same to be true and being deceived thereby, did, on the 3d day of August, 1925, lend and deliver to the said Ferguson-McKinney Manufacturing Company large sums of money, aggregating the sum of $100,000, all of which the defendant well knew at said time; and, as evidence of said loan, did receive and take from said Ferguson-McKinney Manufacturing Company its four certain promissory notes, each for the principal sum of $25,000, and due respectively as follows:

"One for $25,000, due November 5th, 1925.
One for $25,000, due November 12th, 1925.
One for $25,000, due November 19th, 1925.
One for $25,000, due November 24th, 1925.

"Plaintiff further states that on the said 28th day of February, 1925, and on the said 31st day of July, 1925, and on the said 3d day of August, 1925, and continuously from the said 28th day of February, 1925, to and including the said 3d day of August, 1925, and thereafter, the said Ferguson-McKinney Manufacturing Company was hopelessly insolvent and unable to pay its debts and was in failing circumstances, all of which the defendant well knew at and during all of said times; that on or about the........day of October, 1925, said Ferguson-McKinney Manufacturing Company, by reason of being insolvent and unable to pay its debts, went out of business, and thereafter and on the........day of November, 1925, the said Ferguson-McKinney Manufacturing Company was adjudged a bankrupt by the District Court of the United States within and for the Eastern Division of the Eastern Judicial District of Missouri; that payments applied to the discharge of said loan and accrued interests thereon, totaling $44,970.57, have been made as follows:

On November 5, 1925 ...............................$ 8,847.56
On June 1, 1926 ...................................  6,369.30
On November 24, 1926 ..............................  9,098.99

On July 19, 1927 ................................... 16,378.19
On October 10, 1927 ............................... 3,093.66
On April 24, 1928 ................................. 1,182.87
On May 31, 1929 ................................... 5,962.57

leaving remaining a balance owing, unpaid and now due to plaintiff on said loan in the sum of $49,066.86, for which said sum of $49,066.86, together with interest thereon, and for its costs herein expended, plaintiff prays judgment against the defendant.''

In disposing of the question of the sufficiency of the petition we must take as true all of its allegations and construe them liberally in favor of the pleader. With that principle of law in mind let us examine the petition and see wherein there are any facts alleged that would bind the appellant, Carleton Dry Goods Company, to pay the debt created by the notes in question.

Under the allegations of the petition the appellant, Carleton Dry Goods Company, and the Ferguson-McKinney Manufacturing Company, the signer of the notes, are two separate and distinct corporations, having no connection with each other whatever except that Murray Carleton was a stockholder and director in each corporation, the president of the Carleton Company, the treasurer of the Ferguson Company and manager of both.

For the purpose of this opinion only, we will treat the allegation, that Carleton was the manager of the corporations, as a sufficient allegation that he was authorized to act for the corporations within the scope of their respective ordinary business transactions.

The petition then goes on to allege in substance that the Ferguson Company was accustomed to borrowing large sums of money from plaintiff and other banks on the strength of financial statements reflecting its business condition, all of which defendant Carleton Company knew; that defendant advanced to the Ferguson Company certain sums of money so that on February 28, 1925, the Ferguson Company was indebted to the Carleton Company in the sum of $1,251,000. The petition then charges specifically that the Ferguson Company, through its agent and manager, Carleton, on February 28, 1925, caused to be prepared a false audit or balance sheet for the purpose of obtaining a loan from and defrauding plaintiff bank.

Let us note here that it is not charged that this financial statement or balance sheet was authorized to be made or caused to be made by the Carleton Company or that it conspired or connived with the Ferguson Company in the making thereof.

The petition then charges that the debt of $1,251,000, owing by the Ferguson Company to the Carleton Company, was purposely omitted from the balance sheet, prepared by the Ferguson Company, with the intent to deceive plaintiff bank; that the Ferguson Company applied for a loan and utilized this balance sheet in obtaining a loan

of $100,000 from the plaintiff bank and that it was deceived by the balance sheet all of which the Carleton Company knew and did not notify plaintiff bank of the fraud being practiced upon it; that the Carleton Company well knew at the time that the Ferguson Company was hopelessly insolvent.

Appellant contends that the petition does not state a cause of action against it on the notes in question because it omits to charge, first, that Carleton was, at the time the loan was secured from the plaintiff bank, acting for the Carleton Company or within the scope of his apparent authority; second, that the petition does not charge that Carleton was authorized by the Carleton Company in regard to the matter involved. Other points are made but all may be discussed under the two contentions mentioned. Appellant, through its attorneys, has spent much time in oral argument as well as in its briefs on the Statute of Frauds. Section 2970, Revised Statutes 1929, which provides as follows:

"No action shall be brought to charge any person upon or by reason of any representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and subscribed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

We will forego a discussion of the application of this statute to this case because respondent earnestly insists that the petition is good as an action for fraud and deceit, that is, that the defendant, Carleton Dry Goods Company, actively participated in the fraud and conspired with the Ferguson Manufacturing Company in obtaining the loan for defendant's benefit on the strength of the false balance sheet.

Respondent in answer to appellant's contention, that the petition omitted to state that Carleton acted for and with the authority of the Carleton Company in obtaining the loan and in the preparation of the false audit, says that the petition sufficiently states these facts in the following language to-wit:

"At all times herein mentioned one Murray Carleton was a stock holder and director of the defendant Carleton Dry Goods Company . . . and at all times mentioned was the president and acting as such of the defendant Carleton Dry Goods Company."

The above statement will be found in the third paragraph of the petition. As we view it that paragraph merely described Murray Carleton and his connection with the various corporations in order that the reader of the petition might understand who Murray Carleton was and his connection with the companies when referred to in later parts of the petition. But be that as it may, the only allegation to be found there is that Murray Carleton was at all times mentioned

in the petition the president, and acting as such, of the defendant corporation. Let us, for the purpose of argument, connect this clause with the fifth paragraph of the petition where it is charged that Murray Carleton prepared or caused to be prepared a false balance sheet. It will be noted that it is specifically charged in the fifth paragraph that the Ferguson-McKinney Manufacturing Company "through its said officer, agent and manager, Murray Carleton, prepared or caused to be prepared a balance sheet, etc." Add to that statement the above statement from paragraph three that Murray Carleton was at the time the president of the defendant company and acting as such. Does that add any particular force to the petition or charge the Carleton Company with participating in the fraud? We think not. So far as the allegations of the petition are concerned, even if given a most liberal construction in plaintiff's favor, they charged nothing more against the defendant Carleton Company than that it knew that a fraud was being practiced upon the plaintiff by the Ferguson-McKinney Manufacturing Company and that it, the Carleton Company, did not notify the plaintiff thereof.

▪ Under certain circumstances silence by a party to a contract may be a basis for an action for fraud and deceit. [See 26 C. J. 1069, sec. 12.] But no facts are pleaded that created any legal duty upon the defendant to notify plaintiff that the Ferguson Company was preparing and intending to defraud the plaintiff. [26 C. J. 1076, sec. 18.]

The fact that Murray Carleton was a stockholder and director of the defendant company and the Ferguson Company and manager of both, did not of itself render the Carleton Company liable for acts performed by Carleton while transacting business for the Ferguson Company or *vice versa*. [14a C. J. 125, sec. 1894; Pa. Ry. Co.'s Appeal, 80 Pa. St. 265; Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 31 Fed. (2d) 265; Haskell v. McClintic-Marshall Co., 289 Fed. 405, l. c. 413 (9).] The act of Carleton, as pleaded in the petition, of preparing a false audit or balance sheet for the Ferguson-McKinney Manufacturing Company was certainly beyond the scope of his authority as agent of the Carleton Company. In 2 Corpus Juris, page 641, section 285, we read:

"In the absence of anything to show a different intention, the power to make or indorse commercial paper will be construed as extending only to bills, notes, or drafts, executed or indorsed in the business of the principal and for his benefit. The broadest possible authority to make and indorse paper presumptively is to be exercised in the principal's interest only, and does not impliedly extend to making or indorsing paper for the accommodation of third persons." [See, also, 2 C. J., p. 644, sec. 288; Clinton v. Hibbs' Executrix, 202

Ky. 304, 259 S. W. 356, 35 A. L. R. 462; Hargrove v. Armour Fertilizer Works (Ga.), 120 S. E. 800.]

If an agent cannot bind his principal unless specifically authorized in the making of or indorsing paper for accommodation of third persons, then certainly he cannot bind the principal in a fraudulent transaction while acting for a third person in a transaction beyond the scope of his authority and not within the general business of the principal. [2 C. J. 851, sec. 535.] It was, therefore, necessary to charge specifically that the Carleton Company authorized Carleton to act with the Ferguson-McKinney Manufacturing Company in preparing the false balance sheet for the purpose of obtaining the loan in question. Mere knowledge and silence were not sufficient to render the Carleton Company liable for the fraud.

Neither does the fact, as it is pleaded, that the Ferguson Company was indebted to the Carleton Company in the sum of $1,250,000 add any weight to the petition. If this be a fact then the Carleton Company of course knew of the existence of this indebtedness but aside from that it is an immaterial allegation and did not in any way connect the Carleton Company with the fraud.

Respondent has quoted from and cited many cases to sustain its position. The general trend of those decisions may be illustrated by the following quotation from Darks v. Grocer Co., 146 Mo. App. 246, found in respondent's brief:

"Any fraud perpetrated by the agent on a third party in the course of his employment, and for the benefit of the principal, must be imputed to the principal, whether or not the latter had actual knowledge of it."

And also by the following quotation from National Bank v. Graham, 100 U. S. 699:

"Corporations are liable for every wrong they commit, and in such cases the doctrine of *ultra vires* has no application. They are also liable for the acts of their servants while such servants are engaged in the business of their principal, in the same manner and to the same extent that individuals are liable under like circumstances."

The quotations announce a sound doctrine of law that has been well established in our jurisprudence. However, respondent's petition wholly fails to bring the case within the rules stated in the quotations. The petition not only fails to state that Carleton was acting within the scope of his master's (Carleton Company) business, but it affirmatively appears from the petition that Carleton was acting in a business transaction for the Ferguson-McKinney Company at the time the fraud was committed and not for the Carleton Company. Respondent has much to say about the principle of law that a corporation cannot

escape an action for fraud and deceit practiced by its agents by pleading that the fraud was *ultra vires*. That is true. The principal must respond for any fraud that an agent perpetrates while he is about his master's business within the scope of his authority. But when the *business transaction itself* out of which the fraud arose is *ultra vires* and beyond the scope of the agent's authority then the doctrine of *respondeat superior* does not apply. Such is the case before us. The allegations of the petition conclusively show that Carleton was, at the time the alleged fraud was perpetrated, acting in a business transaction for the Ferguson-McKinney Company and within the scope of his authority for that company and not the Carleton Company. Carleton was, therefore, while so acting, a stranger to the Carleton Company. Neither is there any fact alleged from which it may be inferred that the fraud was perpetrated for the benefit of the Carleton Company.

Construing the petition most liberally in favor of respondent and deducing therefrom every legitimate inference permitted by the rules of law applicable to pleadings, it wholly fails to state any cause of action against appellant. It follows, therefore, that the judgment of the circuit court must be reversed. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the court. All the judges concur.

On motion to modify judgment filed by respondent, the opinion is modified so as to read, reversed and remanded.