## Waller v. Georgetown National Bank et al.
(Decided June 7, 1935.)

HUNT & BUSH and RUFUS LISLE for appellant.
BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In 1917 appellant and defendant below Frances F.

Waller, married her husband, R. Herndon Waller. In 1919, after his return from serving as a soldier in the World War, he and his wife moved and settled upon a farm containing about 590 acres which she owned for and during her life, and which is situated near Georgetown, Ky. Upon making that move (they residing in Paris, Ky., at the time of their marriage), her husband took charge and possession of the farm and also took charge of and with his wife's consent converted to his own use about $49,000 of cash, United States bonds, and other securities that she owned. He opened up an account with appellee and plaintiff below, Georgetown National Bank, in his own name, and the proceeds of the converted property of his wife was put to his individual credit as a customer of the bank. Likewise he so deposited all of the proceeds from the farm during his operation of it, which was about twelve years. When he would need money, either for his farming operations or any other purpose, and had none on hand, he executed his individual notes to plaintiff and, perhaps, to other banks, and thereby supplied his immediate necessities. In other words, the proof in the case shows that defendant relinquished control of all of her property both real and personal to her husband and vested him with exclusive power and authority to do with it as he pleased, and for his individual benefit with no retained interest in either its maintenance or profits therefrom by her. In addition thereto she vested him with absolute title to all of her personal property and retained only her title to her life interest in the farm.

In 1932 there arose a coolness between Mr. and Mrs. Waller, and he left their home and went to his old one at Hopkinsville, Ky., where he remained about nine months or possibly a year, and then returned to his wife and resumed his relationship as her husband. His departure from home terminated his control, management, and operation of the farm in the manner we have indicated, and when he ceased to do so he owed plaintiff an aggregated balance on two notes of about $7,000, and it filed this action against defendant to recover that balance on the theory that she was her husband's undisclosed principal, and that when he executed the original notes to plaintiff in his own name (of which those sued on are renewals) he did so as agent for defendant and for and on her behalf, and which fact plaintiff did not

know at the time, and that if it had so known it would not have permitted the debt to be contracted.

The petition, in alleging the relationship by which defendant is sought to be held liable for her husband's individual notes, says: "It says that he [the husband and alleged agent of defendant] handled said farm and said personalty as his own during all of said period of time, receiving all of the proceeds therefrom, and placing it to his individual credit. * * * It says that relying on the statements of the said Waller (husband) in regard to his being the owner of said personal property, and that he was entitled to the proceeds of said farm, it took from the said Waller promissory notes signed by him as of the above mentioned dates," etc. The alleged agency is thus averred: "It says that shortly after their marriage the defendant Frances F. Waller, turned over to the defendant R. Herndon Waller, her entire estate both personalty and realty, to manage, control, and operate, and that he immediately took possession of said personalty, and with the consent and authority of the said Frances F. Waller he had all of said stocks, bonds, etc., transferred to his own name, and that at the time of the matters hereinafter set out, he had full possession and apparent ownership of all of said personal property."

The wife's demurrer filed to the petition was overruled with exceptions, followed by an answer putting in issue the material averments of the petition in so far as they attempted to fasten liability on her. The business relationship as so created between the husband and the wife, as so partly averred in the petition, was attempted to be proven by his general conduct and outwardly created appearances during his reign as operator of his wife's farm, and by his own testimony which was introduced over the objections of his wife. It supported substantially the facts that we have related and substantiated the averments of the petition as to his management and control of his wife's property in his own name, the conversion of her property and putting it in his name, the execution of notes to defendant and, perhaps, to other banks, but his testimony failed to prove that in doing so he was acting *as agent* for his wife, or as her partner in the operation of the farm. The court tried the case without the intervention of a jury by agreement of parties and rendered judgment against.

Mrs. Waller for the amount sued for. Her motion for a new trial was overruled, and she prosecutes this appeal, insisting through her learned counsel upon a number of grounds entitling her to a reversal of the judgment, some of the more important of which we will refer to, consider, and determine in the disposition of the case.

To begin with, we have been cited to no law, nor have we been able to find any, where one spouse may be held personally liable for the debts of the other contracted by the latter in his or her own name under the facts and circumstances of this case, and where, as we interpret the record, there existed between them neither the relationship of partner, nor that of principal and agent. A principal in the latter relationship is presumed to, at least, have some reserved interest in the outcome of the operations of the agency, and the same is true with reference to a silent partner. There is no allegation (but if otherwise there is absolutely no proof) that Mrs. Waller from the time she turned over her property to her husband exacted, demanded, requested, or required that he pay her any part of the proceeds of the farming enterprise in which he thereafter embarked on her farm owned by her for life, save and except the implied obligation, as her husband, to furnish his wife a support commensurate with his ability. There is not a breath of testimony in the case that she expressly or by implication reserved the right to take back from her husband any part of her personal property with which she had vested him with title, nor did she make any such reservation as to his management of the farm. On the contrary, she consented for him to do so in the manner set out in the petition and vested him with the right to retain title in himself to all of the proceeds and profits, and started him off with $49,000 worth of her personal property. When the facts are considered as thus shown they are stripped of any feature or element of the relationship of principal and agent, or that of partner in the operation, although liability is not sought to be fastened on Mrs. Waller as a partner. We know of no law that entails liability upon one because he gives to another his property to be operated by the donee in his own name and with the right to appropriate the proceeds. Nor do we know of any law that would impose liability on one who gives to another property outright and vests him with title to it when and if he should so

handle it thereafter as to become indebted. Such, as we conceive, were and are the conditions in this case.

But it is said that Mr. Waller was charged with the duty and did maintain the farm of his wife, and in doing so spent considerable sums of money in improving it, and that the authority that he possessed as alleged in the petition impliedly vested him with the right to borrow money for the purpose of his contractual obligation of maintenance. In the first place, no such obligation on his part was proven to have been made at the time appellant turned her farm over to him. But if there had been, then any of his indebtedness that he may have created as her alleged agent could not in any event be made that of the wife, unless the proceeds of the indebtedness was spent by him *in the maintenance* of the farm. There was clearly no express conferred authority from Mrs. Waller upon her husband to create debts by the execution of notes as her agent or otherwise, and such authority, if it existed at all, arises by implication from the facts and circumstances of the case. The case of Williams v. Dugan, 217 Mass. 526, 105 N. E. 615, L. R. A. 1916C, 110, had under consideration the right of an agent to borrow money and create debts in the alleged operation of his agency so as to bind his principal, and the court held, as stated in the syllabus, that: "The power of an agent to borrow money for his principal, or to execute and deliver promissory notes for him, must be granted in express terms, or flow as a necessary and inevitable consequence from the nature of the agency actually created." At the close of that opinion, as reported in the last publication, is an extended annotation, dealing with the question in all of its phases, and at its beginning the learned annotator in stating the prevailing and universal rule upon the subject says: "The power of an agent to borrow money on his principal's credit is obviously a dangerous one, and one which the courts are reluctant to imply. As stated by the Supreme Court of Georgia in a comparatively recent case: 'Authority to borrow money is among the most dangerous powers which a principal can confer upon an agent. * * * A power so perilous is not to be implied from acts which in other matters less hazardous might create an agency. It must makes an aggregate sum greatly in excess of all the inevitably inferable from the very nature of the agency actually created. So strict is the rule that it will not

be presumed even from an appointment of one as general agent, unless the character of the business or the duties of the agent are of such a nature that he was bound to borrow in order to carry out his instructions and the duties of the office.' So, authority to borrow money is not to be implied unless the transaction of the business which is within the agent's express authority absolutely requires the exercise of the power to borrow in order to carry it on. It is not a sufficient ground for the inference of such authority, that the proposed act is convenient or advantageous, or more effectual in the transaction of the authorized business, but it must be practically indispensable to the execution of the duties of the agent.''

A strong and most convincing circumstance in this case, indicating that Mrs. Waller never contemplated conferring authority upon her husband to create obligations against her in the maintenance and operation of her farm, is that she at the time he took charge of it turned over to him $49,000 of her personal property, and from which the deduction is practically inescapable that he was to take that amount of her property and operate the farm in his own name and for which she, so far as this record shows, was to obtain nothing, except that which the law imposed upon her husband to furnish her.

However, if it were otherwise shown, and it clearly appeared that Mrs. Waller turned her farm over to her husband to manage *for her* as principal, and he as her agent for that purpose, then under the authority supra he could borrow money only for that purpose and the proceeds of any indebtedness that he may have individually created, not devoted to that purpose by him, she could in no manner be held responsible for, and which learned counsel representing plaintiff seem to admit. The beginning of the indebtedness here sued on was in 1928. During that year the original notes creating it were executed, and covering the same period of time the husband spent thousands of dollars with brokerage firms in margin operations on the stock market whereby he lost considerable sums aggregating largely in excess of the amount borrowed by him. While he operated the farm, according to his testimony, he realized, as proceeds therefrom, an average of $7,000 per annum. He started out with $49,000 of his wife's prop-

erty, and after deducting a reasonable amount of the proceeds of the farm for the living of the family, there remained some surplus of such proceeds, which, added to the personal property he received from his wife, makes an aggregate sum greatly in excess of all the combined improvements he put upon his wife's farm, and which demonstrates that his losses (including the indebtedness of plaintiff) were not due to the expenditures made in improving the farm, but to his individual transactions on the stock market, which were wholly disconnected from his alleged agency of his wife, and for which she would in no wise be responsible under the prevailing rule supra, even if there had been a clearly expressed relationship of principal and agent, and which is the only theory upon which recovery against her is sought. Other authorities sustaining the case supra, and the annotation referred to, are 2 C. J. 643, 645, and 656; 21 R. C. L. 884; Clinton v. Hibbs' Ex'x, 202 Ky. 304, 259 S. W. 356, 35 A. L. R. 462; Corn v. Merideth, 160 Ky. 677, 170 S. W. 22, and cases and authorities cited therein.

But it is said that after defendant's husband left her and abandoned the operation of her farm in the midst of a growing crop, she took charge of it and sold it after maturity, and likewise sold some farming implements thereon and thereby in some manner ratified the alleged agency of the husband and became personally responsible for his debts, at least to the extent of the property so converted by her. However, there was but little of such proceeds left after she discharged some indebtedness of her husband in the growing of the crop and, perhaps, some amounts due on the purchase price of farming implements. But however that may be, we are convinced that such action on her part under the circumstances had no retroactive effect to create an agency that had not theretofore existed. At most, it would only render her a creditor of her husband to the amount of his property which she wrongfully appropriated to her use and which could be reached in her hands by attachment proceedings and summoning her as garnishee, but which was not done nor attempted. However, we would not be understood as now declaring that under the circumstances she became liable to her husband, but only as saying that in such event the proper procedure against her would be as indicated, and not the one employed in this case.

We have not gone into details as to the testimony, but contented ourselves with giving its substance which we think is sufficient to demonstrate that the court erroneously adjudged appellant liable for the indebtedness sued on.

Wherefore, the judgment is reversed, with direction to set it aside and to grant the new trial, and for proceedings consistent with this opinion.