OPINION OF THE COURT BY JUSTICE VENTERS This matter is before the Court on remand pursuant to the opinion of the United States Supreme Court in Kindred Nursing Centers Ltd. Partnership v. Clark, 581 U.S. -, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017). The case initially came to this Court as three separate actions which we consolidated into a single opinion styled Extendicare Homes, Inc. v. Whisman, 478 S.W.3d 306 (Ky. 2015).[1] Extendicare Homes, Inc., did not seek review by the United Stated Supreme Court, and so our disposition of its case, No. 2013-SC-000426-1, Extendicare Homes, Inc. v. Whisman became final. Without Extendi-care Homes as a party to the United States Supreme Court action, the case went forward with Kindred identified as the Appellant. To avoid confusion, we refer to the final decision of this Court as “Ex-tendicare” and the decision of the United States Supreme Court as “Kindred.” Among other holdings, Extendicare held that an attomey-in-fact did not have the authority to bind his principal to a pre-dispute arbitration agreement unless that authority was clearly stated in the power-of-attorney document. In Kindred, the Supreme Court dubbed this the “clear statement rule,” and for convenience and consistency we accept that term as a useful name. As articulated in Extendicaré, we set forth the clear statement rule as a more specific application of the general rule stated in Ping v. Beverly Enterprises, Inc., 376 S.W.3d 581 (Ky. 2012).[2] We said in Extendicare: [Ping] cautioned ... that given the ‘significant legal consequences’ arising from an agreement waiving the principal’s rights of access to the courts and to trial by jury, ‘authority to make such a waiver is not to be inferred lightly,’ Our holdings throughput this opinion, as in Ping itself, serve to highlight our reservation about casually inferring a power laden with such consequences, 478 S.W.3d at 327 (quoting Ping, 376 S.W.3d at 593). Kindred Nursing Centers challenged the “clear statement rule” by petitioning the United States Supreme Court for a "writ of certiorari. The writ was granted and the Supreme Court ultimately concluded that our adoption of the clear statement rule, insofar as it affected Kindred’s pre-dispute arbitration agreement, impinged upon the supremacy of the Federal Arbitration Act. Our ruling in the case of Kindred Nursing Centers Ltd. Partnership v. Clark turned exclusively upon the clear statement rule, and so the Supreme Court’s decision reversed it. However, our ruling in the associated case of Kindred Nursing Centers Ltd. Partnership v. Wellner also rested upon alternative grounds. Uncertain about whether we had incorporated the clear statement rule into the alternative basis for the Wellner decision,- the Supreme Court'remanded that case for üs to determine whether the alternate grounds for our holding with respect to the Wellner POA was “wholly independent” of the clear statement rule. The Supreme Court said: The Kentucky Supreme Court began its opinion by stating that the Wellner power of attorney was insufficiently broad to give Beverly the authority to execute an arbitration agreement for Joe, If that interpretation of the document is wholly independent of the court’s clear-state-' ment rule, then nothing we have said disturbs it. But if that rule at all influenced the construction of the Wellner power of attorney, then the court rrmst evaluate the document’s meaning anew. The court’s opinion leaves us uncertain as to whether such an impermissible taint occurred. On remand, the court, should determine whether it adheres, in the absence of its clear-statement rule, to its prior reading of the Wellner power of attorney [POA], Kindred, 137 S.Ct. at 1429 (internal citations omitted) (emphasis added). So, the question that Kindred presents to us on remand is this: Was our interpretation that the Well-ner POA did not authorize attorney-in-fáct Beverly" Wellner to execute Kindred’s pre-dispute arbitration agreement wholly independent of, and not impermissibly tainted by, the clear statement rule? The Supreme Court directed on remand that we “evaluate the document’s meaning anew” only if our original construction of the Wellner POA was “impermissibl[y] taint[ed]” by, or not “wholly independent of,” our subsequent adoption of the “clear statement rule.” It follows that if our construction of the Wellner POA was “wholly independent of [the] clear-statement rule, then nothing [in Kindred] disturbs it.” Id.[3] Our ruling in Extendicare relating to Kindred’s demand for arbitration of the Wellner claim was based upon two alternative grounds. First, we concluded that neither of the two POA provisions relied upon by Kindred gave the agent, Beverly Well-ner, the authority to execute on behalf of her principal, Joe Wellner, a pre-dispute arbitration agreement. Second, we applied the ill-fated clear statement rule. The Supreme Court was “uncertain” about whether the second alternative unduly influenced our reasoning in deciding the first alternative. The premise behind the Supreme Court’s uncertainty seems to be its perception that our application of the clear statement rule, rather than the manifestation of our profound respect for the right of access to the Court of Justice explicitly guaranteed by the Kentucky Constitution and the right to trial by jury designated as “sacred” by Section 7 of the Kentucky Constitution, demonstrated instead a hostility to federal policies implicit in the Federal Arbitration Act and a resulting aversion to any implication of authority to make an arbitration agreement. So, we explain that aspect of our Exten-dicare decision to demonstrate its purity from the taint of anti-arbitration bias. As a frame of reference for whether our interpretation of the breadth and scope of the Wellner POA was unduly influenced by the clear statement rule, we begin with a glance at the Clark POA. We concluded that the universally broad and vague language employed in the Clark POA,[4] without any express reference to the waiver of the rights of access to the courts and jury trials, nevertheless did indeed vest the principal’s attorney-in-fact with authority to execute a pre-dispute arbitration agreement. We held that the Clark POA authorized the agent’s execution of Kindred’s pre-dispute arbitration agreement despite the absence of a clear statement to that effect; only the application of the clear statement rule avoided that result. Obviously, nothing even close to a “clear statement” was needed in the Clark POA to authorize the agent to waive her principal’s fundamental constitutional right of access to the courts and a jury trial. That power, we said, would be implied from the vague and all-encompassing language of the Clark POA. The’ concern that, because of some residual influence of the clear statement rule, we are averse to inferring the authority to execute an arbitration agreement dissolves upon recognizing that we inferred exactly that authority in the Clark matter. See Extendicare, 478 S.W.3d at 327. Turning now to our interpretation of the Wellner POA’s specific language, we note again that Kindred relied upon only two provisions of the Wellner POA as authority for Beverly Wellner’s execution of Kindred’s pre-dispute arbitration agreement: 1) the power “to demand, sue for, collect, recover and receive all debts, monies, interest and demands whatsoever now due or that may hereafter be or become due to me (including the right to institute legal proceedings therefor)”; and, 2) the power “to make, execute and deliver deeds, releases, conveyances and contracts of every nature in relation to both real and personal property, including stocks, bonds, and insurance.” Id. at 325,[5] At this point it is worth recalling that the “act” of Wellner’s agent which required authorizing language from the POA document was not the enforcement, through legal proceedings or otherwise, of something then due or to become due to Joe Wellner; nor was it the making of a contract or instrument pertaining to any of Joe Wellner’s property. The “act” that required authorization was signing an agreement which makes no reference at all to Joe’s property and instead pertains exclusively to his constitutional rights. Our construction of the two cited provisions of the Wellner POA issues was clear and logical and, in opposition to the clear statement rule, expressed a willingness to infer in proper cases the power to commit to arbitration even where that express authority was lacking. With respect to the powers to “demand, sue for, collect, recover and receive all ... demands whatsoever” and “to institute legal proceedings,” it should be noted that our Wellner analysis incorporated by direct reference our analysis of the similar language of the Whisman POA. We said without reservation that “the power to ‘institute or defend suits concerning my property rights’ would necessarily encompass the power to make litigation-related decisions within the context of a suit so instituted, including the decision to submit the pending dispute to mediation or arbitration.” Id. at 323 (emphasis added). Despite the lack of a clear statement authorizing the waiver of the principal’s fundamental rights of access to the courts and to a jury trial, we expressly held that the power to bind existing claims to arbitration would be inferred from the “institute suits” provision of the Wellner POA. Far from being tainted by an association with the clear statement rule, that holding is antithetical to the clear statement rule. The distinction we made with respect to the pre-dispute arbitration agreement was not based at all on any aversion to an implied, rather than an express, power to waive constitutional rights. Beverly Well-ner did not execute Kindred’s optional free standing pre-dispute arbitration agreement within the context of a lawsuit or claim for the recovery of anything belonging to Joe Wellner. The act that required supporting authorization was her execution of the pre-dispute arbitration agreement in the context of admitting him to a nursing home.[6] That act was in no way connected to the pursuit of any claim of Joe’s. Rather than an insistence upon a clear statement, we rejected Kindred’s argument simply because the act of executing a pre-dispute arbitration agreement upon admission to a nursing home had nothing at all to do with “demand[ing], su[ing] for, collect[ing], recover[ing] and receiving] all ... demands whatsoever” and “instituting] legal proceedings,” and even settling existing claims by arbitration or litigation. Id, at 325. As to our construction of the power to máke contracts “in relation to both real and personal property,” we explicitly recognized that “a personal injury claim is a chose-in-action, and therefore constitutes personal property.” Id. at 325-326. Notwithstanding the absence of a clear statement authorizing arbitration, we straightforwardly held that the power to make contracts relating to personal property authorizes the agent to arbitrate the principal’s personal injury claim. Here, too, our disagreement with Kindred has nothing to do with the concept of the clear statement rule that the authority to waive the constitutional rights of another person must be clearly stated. Rather than any reliance upon the clear statement rule, our decision with respect to this provision of the POA was based exclusively upon the clear fact that Kindred’s pre-dispute arbitration contract did not relate to any property rights of Joe Wellner. It did not buy, sell, give, trade, alter, repair, destroy, divide, or otherwise affect or dispose of in any way any of Joe Wellner’s personal property. By executing Kindred’s pre-dispute arbitration agreement, Beverly did not “make, execute and deliver deeds, releases, conveyances and contracts of [any] nature in relation to [Joe’s] property.” The only “thing” of Joe Wellner’s affected by the pre-dispute arbitration agreement was his constitutional .rights, which no one contends to be his real or personal property. Id. . ... Not a scintilla of our original analysis of the Wellner POA rested upon the premise that the authority to waive constitutional rights (or the corresponding authority, to arbitrate a claim) must be clearly stated. Moreover, our analysis clearly expressed the opposite — that whenever reasonably consistent with the principal’s expressed grant of authority, we would infer without a clear statement the power to bind him to an arbitration agreement. Kindred’s agreement failed, not because the Wellner POA lacked a clear statement referencing the authority to waive Joe’s fundamental constitutional rights; it failed because, by its own specific terms it was not executed in relation to any of Joe Wellner’s property, and it was not a document pertaining to the enforcement of any of Joe’s existing claims. As established by the rationale plainly stated in Extendicare, our conclusion that the Wellner POA was insufficient to vest Beverly Wellner with the power to execute a pre-dispute arbitration agreement as part of Joe Wellner’s admission to a nursing home was wholly independent of the clear statement rule decried by the United States Supreme Court. Therefore, as stated by the United States Supreme Court, that aspect of the Extendicare decision remains undisturbed. All sitting. Cunningham, Keller, and Wright, JJ., concur. Hughes, J., dissents by separate opinion in which, Minton, C.J., and VanMeter, J., join. . The three cases are: No, 2013-SC-000426-I, Extendicare Homes, Inc. v. Whisman; No. 2013-SC-000430-I, Kindred Nursing Centers Limited Partnership v. Clark; and No. 2013-SG-000431-I, Kindred Nursing Centers Limited Partnership v. Wellner. . Cert. denied, 569 U.S. 954, 133 S.Ct. 1996, 185 L.Ed.2d 879 (2013). . Kindred Nursing Centers did not challenge our construction of the Wellner POA beyond its criticism of the clear statement rule. Kindred's petition for a rehearing and its petition for a writ of certiorari instead focused exclusively on the clear statement rule, which it described as "a newly-created rule of law disfavoring enforcement of agent-created arbitration agreements.” The failure, of any party to challenge our construction of the Well-ner POA except in the special circumstance identified by the Supreme Court precludes further de novo reconsideration. Accordingly, we do not review our original interpretation of the Wellner POA ab initio. By the explicit terms of the Supreme Court’s mandate, if our original interpretation of the Wellner POA was wholly independent of the clear statement rule, then it must stand as the final decision of this Court. . The Clark POA granted the powers "to transact, handle, and dispose of all matters affecting me and/or my estate in any possible way” and “generally to do and perform for me in my name all that I might if present.” . Whether other provisions of the Wellner POA would support Kindred’s position is beyond the scope of appellate review. Garland v. Commonwealth, 458 S.W.3d 781, 785 (Ky. 2015) ("Arguments not pursued on appeal are deemed waived.”). . We note that Kindred’s optional pre-dispute arbitration agreement was a completely freestanding instrument, fully independent of and not conditioned upon the separate nursing home admission contracts. See Extendicare, 478 S.W.3d at 318.