THOMPSON, K., JUDGE:
Golden Gate National Senior Care, LLC d/b/a Golden Living, its affiliated entities,[1] and Dana Boblitt in her capacity as administrator of Golden LivingCenter - Mt. Holly (collectively Golden) appeal from an order of the Jefferson Circuit Court denying its motion to compel arbitration and dismiss or stay the pending litigation. After reviewing the record and applicable law, we affirm.
In May 2015, David Dolan executed a durable power of attorney (POA) naming Ronald Briney as his attorney-in-fact. In June 2015, Dolan was admitted to Golden Living Center - Mt. Holly, a long-term care facility in Louisville where he resided until August 2015. As part of the admission process, Briney was given the option to sign an Alternative Dispute Resolution (ADR) agreement whereby any disputes between Dolan and the facility would be resolved by arbitration. The facility made clear at the time of admission, that signing an ADR agreement was not a prerequisite to admission and was voluntary. Briney *876 signed the arbitration agreement as Dolan's attorney-in-fact.
In February 2016, Dolan filed a lawsuit in the Jefferson Circuit Court alleging negligence in the care and treatment he received at the facility. In March 2016, Golden filed a motion to compel arbitration and to either dismiss the pending action or hold it in abeyance. Golden relied upon the ADR signed by Briney as Dolan's agent, the Kentucky Uniform Arbitration Act, codified in Kentucky Revised Statutes (KRS) 417.050 et seq. , and the Federal Arbitration Act (FAA), codified in 9 United States Code (U.S.C.) § 1 et seq.
The trial court denied Golden's motion and its subsequent motion to alter, amend or vacate. The trial court found that the ADR agreement was not a requirement for admission to the Golden facility. The trial court then determined that Briney's signing of the ADR agreement exceeded his authority under the POA, which permitted Briney to sign only if it was "requisite" or "necessary" to the performance of any act on behalf of Dolan. This appeal followed.
An order denying a motion to compel arbitration is immediately appealable. KRS 417.220(1) ; Conseco Finance Servicing Corp. v. Wilder , 47 S.W.3d 335, 340 (Ky. App. 2001). We review "the trial court's application of [the law] de novo , although the trial court's factual findings, if any, will be disturbed only if clearly erroneous." Ping v. Beverly Enterprises, Inc. , 376 S.W.3d 581, 590 (Ky. 2012).
Whether an attorney-in-fact had authority to enter into an arbitration agreement upon admission to a nursing home has been a reoccurring issue. The case we conclude is dispositive here, Kentucky Nursing Centers Limited Partnership v. Wellner , 533 S.W.3d 189 (Ky. 2017), was initially before the Supreme Court of Kentucky with two other cases- Extendicare Homes, Inc. v. Whisman and Kindred Nursing Centers Ltd. Partnership v. Clark -which were consolidated into a single opinion styled Extendicare Homes, Inc. v. Whisman , 478 S.W.3d 306 (Ky. 2015).
Extendicare Homes, Inc. did not seek review by the United States Supreme Court. However, Kindred sought review of the Kentucky Supreme Court's decisions in the Clark and Wellner cases in the United States Supreme Court, which issued a consolidated opinion and reversed the Supreme Court of Kentucky in the Clark case but remanded the Wellner case. Kindred Nursing Centers Limited Partnership v. Clark , --- U.S. ----, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017). To avoid confusion we clarify that in this opinion, Whisman refers to our Supreme Court's initial decision, Clark refers to the United States Supreme Court's decision, and Wellner refers to our Supreme Court's decision on remand.
It is declared under state and federal law that arbitration is a favorable means of dispute resolution. KRS 417.050 provides that a written contract to submit any controversy to arbitration between the parties is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA contains the identical provision. 9 U.S.C. § 2. The United States Supreme Court has warned that states may not apply legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT & T Mobility LLC v. Concepcion , 563 U.S. 333, 339, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011). That warning was not, in the United States Supreme Court's view, heeded in Whisman .
As noted in Whisman , the Kentucky Supreme Court considered two POAs. The Clark POA stated that the attorney-in-fact *877 had the authority "to transact, handle, and dispose of all matters affecting me and/or my estate in any possible way" and "to do and perform for me and in my name all that I might if present. " Whisman , 478 S.W.3d at 317-18. The Kentucky Supreme Court held that "[g]iven this extremely broad, universal delegation of authority, it would be impossible to say that entering into a pre-dispute arbitration agreement was not covered." Id. at 327. However, our Supreme Court held that was not enough to authorize the attorney-in-fact to enter into an arbitration agreement. The Court observed that by executing the arbitration agreement, the attorney-in-fact waived the principal's constitutional rights to access the court and for a trial by jury. Id. at 329. It held that "the power to waive generally such fundamental constitutional rights must be unambiguously expressed in the text of the [POA] in order for that authority to be vested in the attorney-in-fact." Id. at 328.
The United States Supreme Court reversed. It held that a rule requiring a clear statement conferring on the attorney-in-fact the power to waive constitutional rights where the attorney-in-fact otherwise possessed the power to enter into pre-dispute arbitration agreements was a prohibited rule "hinging on the primary characteristic of an arbitration agreement-namely, a waiver of the right to go to court and receive a jury trial." Clark , 137 S.Ct. at 1427. The United States Supreme Court explained:
As noted earlier, the state court held that the Clark [POA] was sufficiently broad to cover executing an arbitration agreement. The court invalidated the agreement with Kindred only because the [POA] did not specifically authorize Janis to enter into it on Olive's behalf. In other words, the decision below was based exclusively on the clear-statement rule that we have held violates the FAA. So the court must now enforce the Clark-Kindred arbitration agreement.
Id. at 1429 (citation omitted).
The Wellner POA contained different language and the Kentucky Supreme Court concluded its powers were not as broad as those in the Clark POA. In contrast to its conclusion that the Clark POA was broad enough to give the attorney-in-fact authority to enter into a pre-dispute arbitration agreement, the Kentucky Supreme Court decided that the Wellner POA was insufficiently broad to give the attorney-in-fact authority to execute an arbitration agreement on the principal's behalf. Whisman , 478 S.W.3d at 325-26. That reasoning, the United States Supreme Court noted, was not based on any characteristic of a pre-dispute arbitration agreement but was an application of Kentucky law. The United States Supreme Court concluded that "[i]f that interpretation of the [Wellner POA] is wholly independent of the court's clear-statement rule, then nothing we have said disturbs it. But if that rule at all influenced the construction of the Wellner power of attorney, then the court must evaluate the document's meaning anew." Clark , 137 S.Ct. at 1429. The Wellner case was remanded to the Kentucky Supreme Court to determine whether its opinion was tainted by the clear-statement rule. Id.
On remand, the Kentucky Supreme Court emphasized that Kindred did not rely on as broad of a provision as that in the Clark POA. As stated by the Court, Kindred relied on two provisions:
1) the power "to demand, sue for, collect, recover and receive all debts, monies, interest and demands whatsoever now due or that may hereafter be or become due to me (including the right to institute legal proceedings therefor)"; and, 2) the power "to *878 make, execute and deliver deeds, releases, conveyances and contracts of every nature in relation to both real and personal property, including stocks, bonds, and insurance."[2]
Wellner , 533 S.W.3d at 193. Ultimately, the Court reaffirmed its decision that neither provision was sufficiently broad to include the authority to execute an arbitration agreement and that its decision was made independent of and untainted by the clear-statement rule denounced in Clark . Id. at 194.
The Kentucky Supreme Court reiterated its original conclusion that with respect to the powers to "demand, sue for, collect, recover and receive all ... demands whatsoever" and "to institute legal proceedings," the Wellner POA confers the authority to bind existing claims to arbitration. Id. at 193. However, the Kindred arbitration agreement was not executed in the context of a lawsuit or claim but in the context of admitting the principal to a nursing home. For that reason, it did not confer the authority to sign the arbitration agreement. Id.
Our Supreme Court also reaffirmed its original holding that the power to make contracts "in relation to both real and personal property" did not confer the power to execute a pre-dispute arbitration agreement because it did not relate to the principal's property rights. Id. at 194. As the Court explained, its decision did not turn on the clear-statement rule.
[O]ur decision with respect to this provision of the POA was based exclusively upon the clear fact that Kindred's pre-dispute arbitration contract did not relate to any property rights of Joe Wellner. It did not buy, sell, give, trade, alter, repair, destroy, divide, or otherwise affect or dispose of in any way any of Joe Wellner's personal property. By executing Kindred's pre-dispute arbitration agreement, Beverly did not "make, execute and deliver deeds, releases, conveyances and contracts of [any] nature in relation to [Joe's] property." The only "thing" of Joe Wellner's affected by the pre-dispute arbitration agreement was his constitutional rights, which no one contends to be his real or personal property.
Id. The Court concluded:
Kindred's agreement failed, not because the Wellner POA lacked a clear statement referencing the authority to waive Joe's fundamental constitutional rights; it failed because, by its own specific terms it was not executed in relation to any of Joe Wellner's property, and it was not a document pertaining to the enforcement of any of Joe's existing claims.
Id.
The question before us is whether the powers conferred under the Dolan POA are sufficiently broad to include the power to enter into pre-dispute arbitration agreements. The POA signed by Dolan states in part:
[M]y said attorney-in-fact [shall have] full power and authority to do and perform all and every act and thing whatsoever, requisite, necessary and proper to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present[.]
By example, but not by limitation, this [POA] shall give my attorney-in-fact the right to conduct banking transactions, sign my name on checks, communicate with insurance companies, and perform *879 any other transaction, on my behalf and in my name.
(Emphasis added.) We disagree with Golden that the POA is sufficiently broad under Kentucky law to confer the authority upon Briney the authority to execute a pre-dispute arbitration agreement on Dolan's behalf.
In Clark , the United States Supreme Court held that if a POA conferred the authority to execute an arbitration agreement, Kentucky could not require an additional clear statement that the attorney-in-fact had the authority to waive the principal's constitutional rights to access to the courts and a jury trial. After all, the Court reasoned, the waiver of those rights is inherently characteristic of arbitration. Clark , 137 S.Ct. at 1427. However, the United States Supreme Court did not disturb Kentucky law pertaining to the interpretation of all POAs. Regardless of the nature of the power conferred, POAs will be given a strict and narrow interpretation. Clinton v. Hibbs' Ex'x , 202 Ky. 304, 259 S.W. 356 (1924), aptly illustrates the application of the rule.
The Court considered that authority of L.C. Hibbs's general POA to his wife, Lula Hibbs. The POA stated:
I, L. C. Hibbs, being now infirm in health, and for that reason not being able to attend to my business affairs, do hereby appoint my wife, Lula Hibbs, as my agent and attorney in fact, and give her full authority to attend to all of my affairs, to sign checks and also execute any notes that she may deem necessary in the conducting of my affairs, and to transact all of my business during my illness, also to collect all moneys that may be due me, and to represent me in the partnership business in which I may be interested. This June 6, 1920. L. C. Hibbs.
Id. As her husband's attorney-in-fact, Ms. Hibbs signed a note as attorney-in-fact between two unrelated parties, Nelson and Clinton. Id. at 357. After Nelson defaulted, Clinton sued Ms. Hibbs, as executrix of her husband's estate. Ms. Hibbs denied her husband's liability on various grounds including that as her husband's attorney-in-fact, she had no authority under the POA to sign the note. Id. The trial court entered a directed verdict in the estate's favor and Clinton appealed.
The Hibbs' Ex'x Court analyzed the POA noting that it contained words of limitation observing that the POA "by its express terms gave to the wife 'authority to attend to all of my [the principal's] affairs, to sign checks, and also execute any notes that she may deem necessary in the conducting of my [his] affairs, and to transact all of my business during my illness[.]' " Id. at 357 (emphasis added). The word "necessary" the Court held, limited Ms. Hibbs's authority "to the doing of such things and the performance of such acts as were necessary to the conducting of the business affairs of her husband, and manifestly did not include the signing of his name as surety for another." Id. at 357-58. The Court refused to extend Ms. Hibbs's authority beyond the "fair meaning of the words conferring it[.]" Id. at 358.
Even when there is express authority for the agent to bind his principal as surety, it is the policy of the law to construe it strictly, and to hold the principal not bound unless the authority is exercised within the undoubted limits prescribed by the principal.
Id. The Hibbs' Ex'x Court also noted that it was significant how the surety was signed thereby giving Clinton notice of the limitations on her authority. By her signature, Ms. Hibbs articulated in writing she was signing in the context of her husband's agency. Id. at 359.
*880 The Dolan POA does not, as Golden argues, confer the broad power "to do whatever" Dolan himself could have done. Briney's powers were limited by the words "requisite, necessary and proper to be done[.]" That limitation applied to any transaction performed by Briney on Dolan's behalf. As the trial court found, the ADR agreement was optional, which meant it was not requisite, necessary and proper to Dolan's admission to Golden's facility. In short, Briney chose to sign the agreement on Dolan's behalf and did so without his authority.
As the Kentucky Supreme Court pointed out in its detailed analysis in Wellner , although no clear statement that the attorney-in-fact has the power to bind the principal to an arbitration agreement is required, such power will not be inferred unless it is "reasonably consistent with the principal's expressed grant of authority[.]" Wellner , 533 S.W.3d at 194. The express grant of authority and the express limitations on that authority renders the Dolan POA insufficiently broad to confer the power on Briney to bind Dolan to an arbitration agreement. By signing as Dolan's attorney-in-fact, Golden had notice of the limitations on Briney's authority.
Based upon the foregoing, the order of the Jefferson Circuit Court is affirmed.
ALL CONCUR.

GGNSC Louisville Mt. Holly, LLC d/b/a Golden LivingCenter - Mt. Holly; GGNSC Administrative Services, LLC d/b/a Golden Ventures; GGNSC Holdings, LLC d/b/a Golden Horizons; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate Ancillary, LLC d/b/a Golden Innovations; GGNSC Clinical Services, LLC d/b/a Golden Clinical Services; GPH Louisville Mt. Holly, LLC.

The Court declined to consider whether other provisions in the Wellner power-of-attorney that were not pursued on appeal would support Kindred's position. Wellner , 533 S.W.3d at 193 n.5.