RENDERED: JUNE 4, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0760-MR

PRESBYTERIAN HOMES AND
SERVICES OF KENTUCKY, INC.;
BRIDGETTE TODD, IN HER
CAPACITY AS ADMINISTRATOR
OF WESTMINISTER TERRACE; AND
PRESBYTERIAN HOMES AND
SERVICES FOUNDATION, INC.                                      APPELLANTS


                      APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
                      ACTION NO. 19-CI-003823


GLENN DEAN, ADMINISTRATRIX
OF THE ESTATE OF MATTIE E.
HAMPTON, DECEASED                                                APPELLEE


OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE: COMBS, KRAMER, AND K. THOMPSON, JUDGES.

COMBS, JUDGE: Presbyterian Homes and Services of Kentucky, Inc.;

Presbyterian Homes and Services Foundation, Inc.; and Bridgette Todd, in her

capacity as Administrator of Westminster Terrace (referred to collectively as "Presbyterian Homes"), appeal the denial of their motion to stay proceedings and compel arbitration. After our review, we reverse and remand.

On March 27, 2018, Mattie Hampton, now deceased, was admitted to Westminster Terrace, a long-term care facility operated by Presbyterian Homes. Except for periods of hospitalization, Hampton remained a resident of the care home until October 12, 2018.

Upon Hampton's admission to the care home, Hampton's daughter, Glenn Dean, executed on her mother's behalf an agreement to arbitrate "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or Resident's stay at Facility." Dean signed the agreement, indicating that she was the "Legal Representative/Responsible Party." She gave the care home a copy of the power-of-attorney document (the POA) that vested Dean with authority over a wide range of Hampton's affairs, expressly reciting the authority to make "[d]ecisions [r]elating to . . . [Hampton's] institutionalization in a nursing home or other facility" and the power to "act on [Hampton's] behalf for the following purpose[s] . . . [c]laims and [l]itigation." Execution of the agreement to arbitrate was not required for Hampton's admission to the care home. The agreement provided that it could be rescinded by written notice to the care home within thirty (30) days of its execution.

On June 21, 2019, as administratrix of Hampton's estate, Dean filed a civil action in Jefferson Circuit Court against Presbyterian Homes. Dean alleged that Presbyterian Homes failed to provide to Hampton the minimum care necessary for her wellbeing and that it knew that it could not do so. She alleged that the home's wrongful conduct caused Hampton to suffer an accelerated deterioration of health; an unnecessary loss of dignity; extreme pain and suffering; mental anguish; disability; and death. Presbyterian Homes answered the complaint and denied any wrongdoing. It also asserted that the action (except for the wrongful death claim) was prohibited by the terms of the parties' arbitration agreement.

In January 2020, Presbyterian Homes filed a motion to dismiss the action or, in the alternative, to compel the alternative dispute resolution process, staying the wrongful death claim pending resolution of the arbitrable claims. It relied upon the arbitration agreement signed by Dean on Hampton's behalf; Kentucky's version of the Uniform Arbitration Act, codified at Kentucky Revised Statutes (KRS) 417.050 *et seq.*; and the Federal Arbitration Act (FAA), codified at 9 United States Code § 1 *et seq.* The care home argued that the POA document gave Dean broad authority over Hampton's affairs -- specifically encompassing the power to execute the arbitration agreement on her behalf upon her admission to its facility.

In her response, Dean contended that the arbitration agreement was unenforceable for three reasons. First, she lacked necessary authority under the provisions of the POA to enter into a binding, pre-dispute arbitration agreement on Hampton's behalf. Next, the arbitration agreement was not properly authenticated. And third, the agreement was both procedurally and substantively unconscionable.

The circuit court treated the motion as one for summary judgment and denied it in an order entered May 8, 2020. Relying on the decision of the Supreme Court of the United States in *Kindred Nursing Centers Ltd. Partnership v. Clark*, ___ U.S. ___, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017), and the decision of the Supreme Court of Kentucky upon remand in *Kindred Nursing Centers Limited Partnership v. Wellner*, 533 S.W.3d 189 (Ky. 2017), the circuit court concluded that it could not infer from the authority expressly granted to Dean that she had power sufficient to bind Hampton to the arbitration agreement. In light of that conclusion, the court did not address the other arguments presented by Dean to show that the agreement was unenforceable. This appeal followed.

An order denying a motion to compel arbitration is immediately appealable. KRS 417.220(1); *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. App. 2001). We review "the trial court's application of [the law] *de novo*, although the trial court's factual findings, if any, will be disturbed only if clearly erroneous." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky.

2012).

Both Kentucky precedent and national policy favor agreements to arbitrate. *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850 (Ky. 2004). Similarly, "[a]rbitration has always been favored by the courts." *Poggel v. Louisville Ry. Co.*, 225 Ky. 784, 10 S.W.2d 305, 310 (1928). Nevertheless, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Ping*, *supra*. Whether a valid agreement exists is determined by ordinary state-law principles of contract formation. KRS 417.050. However, the statutory framework of the FAA also impacts the court's determination whether a valid arbitration agreement was formed. *Kindred Nursing Centers Ltd. Partnership v. Clark*, __ U.S. __, S. Ct. 1421, 1428, 197 L. Ed. 2d 806 (2017) ("By its terms, then, the [FAA] cares not only about the 'enforce[ment]' of arbitration agreements, but also about their initial 'valid[ity]'—that is, about what it takes to enter into them.")

On appeal, Presbyterian Homes argues that the trial court erred by refusing to compel arbitration and to stay the wrongful death claim. It contends that it met its burden of establishing the existence of a valid agreement to arbitrate because the POA document expressly delegated to Dean the authority to execute the agreement on Hampton's behalf. We agree.

In *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), *rev'd in part, vacated in part by Kindred Nursing Centers Ltd. Partnership v. Clark*, __ U.S. __, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017)*,* the Supreme Court of Kentucky examined the power-of-attorney documents in each of three consolidated arbitration cases -- *Extendicare Homes, Inc. v. Whisman*; *Kindred Nursing Centers Ltd. Partnership v. Clark*; *and Kindred Nursing Centers Ltd. Partnership v. Wellner.*  The Court concluded that none of the attorneys-in-fact was authorized to execute an arbitration agreement tendered by the care homes upon the residents' admission.  It stated that:

> without a clear and convincing manifestation of the principal's intention to do so, we will not infer the delegation to an agent of the authority to waive a fundamental personal right so constitutionally revered as the "ancient mode of trial by jury."

*Id.* at 313.  The Court held that an attorney-in-fact has authority to execute an arbitration agreement **only** where the power-of-attorney document explicitly grants that specific authority -- the "clear-statement rule."

Upon its review, the U.S. Supreme Court noted that the FAA preempts any state rule that discriminates on its face against arbitration.  *Kindred Nursing Centers*, *supra*.  The Court rejected our clear statement rule because it singled out arbitration agreements for disfavored treatment in violation of the FAA.  It concluded that by its decision in *Whisman*, the Supreme Court of

Kentucky had "specially impeded the ability of attorneys-in-fact to enter into arbitration agreements" and "flouted the FAA's command to place those agreements on an equal footing with all other contracts." __ U.S. __, 137 S. Ct. 1421, 1429, 197 L. Ed. 2d 806 (2017).

However, with respect to the decision of our Supreme Court in the associated case of *Kindred Nursing Centers Ltd. Partnership v. Wellner*, the U.S. Supreme Court was uncertain whether the clear-statement rule had influenced the court's construction of the POA document at issue. Consequently, the U.S. Supreme Court remanded that case for a determination of whether there were alternative grounds for the court's rejection of the arbitration agreement in light of the provisions of the Wellner POA that were "wholly independent" of the clear-statement rule. *Id.* at 1424.

Upon remand, the Supreme Court of Kentucky again considered the breadth and scope of the Wellner POA. In *Kindred Nursing Centers Limited Partnership v. Wellner*, 533 S.W.3d at 191, the Court concluded that its prior decision had not been influenced by the clear-statement rule. The Court reasoned that the power of a principal's attorney-in-fact to enter into a pre-dispute arbitration agreement on his behalf could be inferred from a comprehensive delegation of authority. However, the specific authority described in the Wellner POA was deemed insufficiently broad to cover execution of a pre-dispute

arbitration agreement. The POA provisions cited by the Court vested Wellner's attorney-in-fact with authority "to demand, sue for, collect, recover and receive all debts, monies, interest and demands whatsoever now due or that may hereafter be or become due to me (including the right to institute legal proceedings therefor)"; and the power "to make, execute and deliver deeds, releases, conveyances and contracts of every nature in relation to both real and personal property, including stocks, bonds, and insurance." *Id.* at 193. In its decision, our Supreme Court expressed "a willingness to infer in proper cases the power to commit to arbitration even where that express authority [is] lacking." *Id*. The inference can be made wherever it is "reasonably consistent with the principal's expressed grant of authority." *Id.* at 194.

In the case before us, The Hampton POA conferred broad authority upon Dean to make "[d]ecisions [r]elating to . . . [Hampton's] Institutionalization in a nursing home" and to act on her behalf with respect to "[c]laims and [l]itigation." Dean's decision to execute the arbitration agreement was directly related to Hampton's placement at the care home. Execution of the agreement was within her all-encompassing authority to make decisions related to Hampton's admission to the of facility. The fact that execution of the agreement was entirely optional for Hampton's admission to the care home is entirely irrelevant because Dean was specifically empowered to make the decision on Hampton's behalf under

the express terms of the POA document. Moreover, as the Kentucky Supreme Court pointed out in *Wellner*, the authority of an attorney-in-fact to bind her principal will be inferred where it is "reasonably consistent with the principal's expressed grant of authority[.]" *Wellner*, 533 S.W.3d at 194. The express grant of authority conferred upon Dean by Hampton's POA implicitly contemplates and expressly encompasses the power to bind Hampton to the arbitration agreement.

The circuit court erred as a matter of law by concluding that the Hampton POA document "did not include any power that could be interpreted to permit [Dean] to enter into a pre-dispute arbitration agreement on [Hampton's] behalf." Consequently, the judgment of the Jefferson Circuit Court must be reversed.

Therefore, we REVERSE the judgment of the Jefferson Circuit Court and REMAND for entry of an order consistent with this opinion.

KRAMER, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANTS:

Edward M. O'Brien
Louisville, Kentucky

BRIEF FOR APPELLEE:

Megan L. Adkins
Lexington, Kentucky