RENDERED: APRIL 26, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0726-MR

LP RADCLIFF, LLC D/B/A
SIGNATURE HEALTHCARE OF
NORTH HARDIN REHAB AND
WELLNESS CENTER; ASBR
HOLDINGS, LLC; JJLA, LLC; LAS
PALMAS SNF, LLC; LP MANAGER,
LLC; LPMM, INC.; LPSNF, LLC; SHC
LP HOLDINGS, LLC; SIGNATURE
CLINICAL CONSULTING
SERVICES, LLC N/K/A SIGNATURE
HEALTHCARE CLINICAL
CONSULTING SERVICES, LLC;
SIGNATURE CONSULTING
SERVICES, LLC N/K/A SIGNATURE
HEALTHCARE CONSULTING
SERVICES, LLC; AND SIGNATURE
HEALTHCARE, LLC                                          APPELLANTS


                    APPEAL FROM HARDIN CIRCUIT COURT
v.                  HONORABLE LARRY ASHLOCK, JUDGE
                    ACTION NO. 23-CI-00245


ERNEST SIMCOE; ARNP DENISE
BARNES; ARNP KRISTA LANHAM;
BAPTIST HEALTHCARE SYSTEM,
INC. D/B/A BAPTIST HEALTH
HARDIN; BERCHAUN NICHOLLS,
M.D.; CHRISTOPHER KOEBELE,
M.D.; ELIZABETHTOWN

EMERGENCY PHYSICIANS, LLC;
JULIE LANCASTER AS POWER OF
ATTORNEY AND NEXT FRIEND OF
ERNEST SIMCOE; LEON BUTLER,
JR., M.D.; PHARMERICA
CORPORATION OF AMERICA D/B/A
PHARMERICA AND PHARMERICA
HOLDINGS, INC.; PHARMERICA
DRUGS SYSTEMS, LLC; AND
SABRA HEALTHCARE REIT, INC.                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE:  Nearly five years ago, we recognized that "[t]he issue of whether an attorney-in-fact had authority to enter into an arbitration agreement upon admission of a principal to a nursing home has been a recurring issue." *GGNSC Frankfort, LLC v. Richardson*, 581 S.W.3d 590, 592 (Ky. App. 2019). This appeal again presents that vexing issue.  Here, the Hardin Circuit Court concluded a power-of-attorney ("POA") executed by Ernest Simcoe did not give his daughter and attorney-in-fact, Julie Lancaster, the ability to sign an optional arbitration agreement on Simcoe's behalf upon his admission to a nursing home. We agree and so affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are undisputed. In 1998, Simcoe executed a durable POA which appointed Lancaster as his attorney-in-fact. Among the relevant provisions of that POA are clauses allowing Lancaster:

> 2. To demand, sue for, collect, recover and receive all debts, monies, interest and demands whatsoever now due or that may hereafter be or become due to me [Simcoe] (including the right to institute legal proceedings therefore) . . . .
>
> 10. To act as my agent to make health care decisions for me if and when I am unable to make my own health care decisions . . . . My agents [sic] also have the authority to talk with health care personnel, get information, and sign forms necessary to carry out those decisions.
>
> 11. To do and perform all acts necessary or incidental to the carrying out of the powers conferred . . . .
>
> 12. I [Simcoe] hereby further grant unto my said attorney in fact full power in and concerning the above premises and to do any and all acts as set forth above as fully as I could do if I were personally present . . . .

In 2020, Simcoe entered a nursing home facility, LP Radcliff, d/b/a Signature HealthCARE at North Hardin Rehab & Wellness Center ("Signature"). At or near the time Simcoe entered Signature, Lancaster signed an optional arbitration agreement. In other words, Simcoe was not required to assent to the arbitration agreement to reside at, or receive care from, Signature.

The arbitration agreement provides in relevant part:

The parties . . . agree to resolve each dispute on an individual basis, as follows:

- We will first try and resolve the dispute informally between ourselves.

- If we do not succeed, we will mediate the dispute.

- If mediation is not successful, we will arbitrate the dispute . . . .

The arbitrator will be a neutral person who will decide our dispute, and who we agree . . . [w]ill decide all questions about this agreement, including, but not limited to, whether the person(s) signing it has proper authority and whether it is enforceable . . . . **THIS MEANS THAT NO ONE WILL FILE A LAWSUIT AGAINST THE OTHER, AND THAT EACH PARTY IS GIVING UP, OR WAIVING, THE RIGHT TO FILE A LAWSUIT AND HAVE A JUDGE OR A JURY DECIDE THE DISPUTE AND/OR ANY ISSUES ABOUT THIS AGREEMENT**. This also means we agree to completely avoid the court system and that we do not want a judge or jury deciding any part of our dispute (except for motions to compel arbitration and any appeals or appellate proceedings therefrom).

(Emphasis original.)

In 2023, Simcoe, individually, and Lancaster, as Simcoe's attorney-in-fact (collectively "Plaintiffs"), filed a complaint in the Hardin Circuit Court against Signature and its related corporate entities (collectively "Signature"), as well as a hospital and various other medical providers (who are not active participants in this appeal). The complaint generally alleged Simcoe had been improperly medicated.

-4-

Signature filed a motion to compel arbitration, which Plaintiffs opposed.  The trial court denied the motion to compel, its order holding in relevant part "the language of the POA [is] insufficiently broad to grant Lancaster [the] power to bind Simcoe to the arbitration agreement."  Signature then filed this appeal.  *See* KRS[1] 417.220(1)(a).

## ANALYSIS

### Preliminary Matters

We have carefully considered the parties' briefs.  Any argument contained therein not discussed in this opinion lacks relevance, is redundant or is otherwise unnecessary to analyze and to resolve properly the limited issues before us.  Also, because there is sufficient published Kentucky authority to resolve this appeal, we decline to address unpublished opinions cited by the parties or opinions from any federal court except the United States Supreme Court.  And we may affirm for any reason supported by the record, even if our reasoning does not track precisely that used by the trial court.  *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

### Standards of Review

Our Supreme Court has held that:

The standard of review of a trial court's ruling on a motion to compel arbitration is a *de novo* determination

---

[1] Kentucky Revised Statutes.

of whether the trial judge erred when deciding a factual or legal issue. *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 833 (Ky. 2013); *see Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). In *Ping*, we stated "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985, (1995); *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)). Once prima facie evidence of the agreement has been presented, the heavy burden of avoiding the agreement shifts to the other party. *Louisville Peterbilt*, 132 S.W.3d at 857. Factual findings of the trial court are reviewed under the clearly erroneous standard and are deemed conclusive if supported by substantial evidence.

*Green v. Frazier*, 655 S.W.3d 340, 345 (Ky. 2022). The trial court did not make factual findings and the relevant facts appear undisputed, so our review is *de novo*.

### We Decline to Conduct an Unrequested Palpable Error Review of Whether a Court or the Arbitrator Determines Arbitrability Here

Before we may scrutinize the POA to assess whether it gave Lancaster the ability to sign an arbitration agreement on Simcoe's behalf, we must address Signature's antecedent argument that an arbitrator must decide the issue of whether these disputes are subject to arbitration – *i.e.*, the issue of arbitrability. Parties may delegate arbitrability to an arbitrator. *See Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 756 (Ky. 2019). And the arbitration agreement here provides in relevant part that an arbitrator "[w]ill decide all questions about

-6-

this agreement, including, but not limited to, whether the person(s) signing it has proper authority and whether it is enforceable."

But Signature has not shown where it preserved this argument for our review.[2] RAP[3] 32(4) requires the argument section of an Appellant's opening brief to contain "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Signature's brief does not contain preservation statements for some arguments, though it is obvious that Signature sought to compel arbitration. However, it is not obvious that Signature specifically argued in the trial court that the arbitrator had the sole ability to resolve arbitrability issues.

We decline to meticulously examine the multi-volume record to ascertain preservation of this issue. "It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Instead, "[i]f a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628

---

[2] Signature's failure to provide a preservation statement was not discussed in the parties' briefs. But that curious silence is not determinative. "Because preservation determines the appropriate standard of review, an appellate court should determine for itself whether an issue is properly preserved. We are not bound by the view of the parties." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023).

[3] Kentucky Rules of Appellate Procedure.

S.W.3d 147, 155 (Ky. 2021). We therefore regard the arbitrability arguments as unpreserved. Consequently, Signature is entitled to relief if it can satisfy the strenuous palpable error standard, by which a party may receive relief for an unpreserved issue only if its "substantial rights" were affected by an error so egregious that it caused a "manifest injustice . . . ." CR[4] 61.02.

However, palpable error review is a matter of grace, not as of right. *See, e.g.*, *Brank v. Commonwealth*, 566 S.W.3d 560, 566 (Ky. App. 2018) ("Whether to undertake palpable error review is within the sole discretion of the appellate court."). And appellate courts typically only conduct a palpable error review upon request. *See, e.g.*, *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). Signature has not made such a request.

In sum, Signature's brief fails to contain a preservation statement regarding its arbitrability arguments. Therefore, we deem those arguments unpreserved, so Signature would be entitled to relief only upon a showing that any error is a manifest injustice. We are initially skeptical that Signature has shown an error so egregious that it leaps off the page and cries out for relief – the baseline showing a party must make for an error to be palpable. *See, e.g.*, *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023). However, under these facts, we respectfully decline to conduct a *sua sponte* palpable error review of Signature's

---

[4] Kentucky Rules of Civil Procedure.

arbitrability arguments. We strongly caution counsel to scrutinize RAP closely and to follow its requirements scrupulously in all future cases.

## Ping Applies Despite Recent Legislation

The lodestar Kentucky precedent regarding the authority of an attorney-in-fact to sign an arbitration agreement on behalf of a principal is *Ping*, which has been cited over 200 times. In *Ping*, our Supreme Court held that "arbitration agreements are enforced no less rigorously than are other contracts and according to the same standards and principles." 376 S.W.3d at 589. The Court noted the then-current POA statute did "not address what authority may be granted" to an attorney-in-fact, so "[t]he scope of that authority is thus left to the principal to declare, and generally that declaration must be express." *Id.* at 592. Thus, "an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the utmost good faith." *Id.* (internal quotation marks and citation omitted).

In short, a court must closely scrutinize the POA to determine if it vested the attorney-in-fact with the ability to sign an arbitration agreement on behalf of a principal. That laborious, time-consuming process has led to a plethora of extremely fact-specific appellate court decisions. However, *Ping* remains the

POA and arbitration lodestar. *See, e.g.*, *LP Louisville East, LLC v. Patton*, 651 S.W.3d 759, 770 (Ky. 2020) ("Thus, we find *Ping*'s guidance dispositive . . . .").

But Signature contends *Ping* was superseded by legislation which took effect in 2020. Specifically, instead of *Ping*, Signature argues this case is governed by KRS 457.350, which provides in relevant part that "[u]nless the power of attorney otherwise provides, language in a power of attorney granting general authority with respect to claims and litigation authorizes the agent to . . . [s]ubmit to alternative dispute resolution . . . ." Thus, under KRS 457.350, *Ping*'s focus on whether a POA *includes* language granting the agent the express authority to sign an optional arbitration agreement is seemingly inverted so that the agent inherently possesses that authority by virtue of having been granted general authority regarding litigation unless the POA expressly *excludes* it.

The parties vigorously dispute whether KRS 457.350 applies to this POA, which was executed over twenty years before the statute took effect, because Kentucky "adhere[s] to a strong general presumption against retroactive application of statutes absent a clear expression of such intent within the statute . . . ." *City of Villa Hills v. Kentucky Retirement Systems*, 628 S.W.3d 94, 104 (Ky. 2021). *Accord* KRS 446.080(3) ("No statute shall be construed to be retroactive, unless expressly so declared."). Signature contends KRS 457.350 applies to Simcoe's POA because KRS 457.460(1) (as amended in 2020) provides that KRS

-10-

Chapter 457 "applies to a power of attorney created before, on, or after July 15, 2020 . . . ."

KRS 457.350 has the potential to alter how courts analyze the abilities of attorneys-in-fact to bind their principals to arbitration agreements. But we conclude KRS 457.350 does not apply here because the POA did not grant Lancaster "general authority with respect to claims and litigation . . . ."

What constitutes "general authority" is not defined in KRS Chapter 457. However, the term *general authority* has "acquired a peculiar and appropriate meaning in the law," so KRS 446.080(4) requires us to construe the term according to that specialized meaning. Specifically, *general authority* means "[a] general agent's authority, intended to apply to all matters arising in the course of the principal's business." BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *general authority* as a discrete term within the definition of *authority*). Thus, we must determine whether the POA at issue provides Lancaster with authority over "all matters" pertaining to litigation involving Simcoe. It does not.

The POA grants Simcoe the ability to "demand, sue for, collect, recover and receive all debts, monies, interest and demands whatsoever now due or that may hereafter be or become due to me (including the right to institute legal proceedings therefore)." But our Supreme Court has explicitly rejected a claim

-11-

that a strikingly similar clause in a POA authorized the attorney-in-fact to sign an

arbitration agreement on behalf of the principal:

> Turning now to our interpretation of the Wellner
> POA's specific language, we note again that Kindred
> relied upon [the following] provision[] of the Wellner
> POA as authority for Beverly Wellner's execution of
> Kindred's pre-dispute arbitration agreement:  1) the
> power "to demand, sue for, collect, recover and receive
> all debts, monies, interest and demands whatsoever now
> due or that may hereafter be or become due to me
> (including the right to institute legal proceedings
> therefor)" . . . .
>
> The act that required supporting authorization was her
> [the agent's] execution of the pre-dispute arbitration
> agreement in the context of admitting him [the principal]
> to a nursing home.  That act was in no way connected to
> the pursuit of any claim of [the principal] . . . .  [T]he act
> of executing a pre-dispute arbitration agreement upon
> admission to a nursing home had nothing at all to do with
> "demand[ing], su[ing] for, collect[ing], recover[ing] and
> receiv[ing] all . . . demands whatsoever" and
> "institut[ing] legal proceedings," and even settling
> existing claims by arbitration or litigation . . . .

*Kindred Nursing Centers Limited Partnership v. Wellner*, 533 S.W.3d 189, 193-95

(Ky. 2017) (footnote omitted).  We must follow *Wellner*.  SCR[5] 1.030(8)(a).

Our conclusion that this POA did not provide Lancaster with "general

authority" over litigation pertaining to Simcoe is perhaps best shown by listing

examples of POAs which unmistakably give an attorney-in-fact "general authority"

---

[5] Rules of the Kentucky Supreme Court.

over his or her principal's litigation affairs. For example, the sample POA provided by the General Assembly in KRS 457.420 contains a section titled "GRANT OF GENERAL AUTHORITY[,]" within which is a space for the granting principal to check a box indicating the attorney-in-fact has "general authority" regarding "Claims and Litigation[.]" Similarly, a template for a durable POA contained in a treatise on wills and trusts in Kentucky contains a clause sweepingly authorizing the attorney-in-fact:

> To institute, prosecute, defend, abandon, compromise, arbitrate, settle and dispose of any claim in favor of or against me or any property interests of mine; to collect [a] receipt for any claim or settlement proceeds and waive or release all rights of mine; to employ attorneys and others and enter into contingency agreements and other contracts as necessary in connection with litigation; and, in general, to exercise all powers with respect to claims and litigation which I could if present and under no disability.

L. RUSH HUNT & LARA RAE HUNT, BALDWIN'S KY. WILLS AND TRUSTS § 16:3 (May 2023 Update).

We also reject Signature's argument that the POA granted Lancaster the authority to agree to arbitration on Simcoe's behalf by virtue of KRS 457.245(3), which was also enacted in 2020. That statute provides in relevant part that "if a power of attorney grants to an agent authority to do all acts that a principal could do, the agent has the general authority described in KRS 457.270 to

-13-

457.390." We shall discuss the residual powers clauses of Simcoe's POA again later in this Opinion, but they are not as broad as Signature asserts.

Instead, the POA grants Lancaster the authority to "do and perform all acts necessary or incidental to the carrying out of the powers conferred" and to have "full power in and concerning the above premises and to do any and all acts as set forth above as fully as I could do if I were personally present . . . ." The residual powers given to Lancaster pertained only to "carrying out the powers conferred" or "set forth above" in the POA. In other words, the POA provides Lancaster only with the residual authority to perform all acts incidental or necessary to carrying out the powers contained elsewhere in the agreement; the POA does not sweepingly provide Lancaster with carte blanche to "do all acts that a principal could do."

By contrast, we held that a POA which granted an attorney-in-fact the unfettered power to "generally do and perform for [the principal] all that [the principal] may do if acting in [the principal's] own person" was sufficient to permit the attorney-in-fact to sign an arbitration agreement on behalf of the principal in *Richardson*, 581 S.W.3d at 594. In short, because the POA here does not give Lancaster the "authority to do all acts that a principal could do," KRS 457.245(3) is inapplicable, regardless of whether it applies retroactively.

-14-

Distilled simply, Simcoe did not provide Lancaster with "general authority" over all of Simcoe's litigation matters. Therefore, KRS 457.350 does not apply, regardless of its retroactivity.

**Examination of the POA**

We now must scrutinize the POA under the principles of *Ping* and its progeny to determine whether the document contains language authorizing Lancaster to sign an optional arbitration agreement on Simcoe's behalf. We agree with the trial court that it does not.

Three sections of the POA are at issue: a litigation clause, a healthcare decision-making clause and a residual powers clause. As to the litigation clause, we are mainly guided by our Supreme Court's analysis of a strikingly similar clause in *Wellner*, *supra*. In *Wellner*, the POA granted the attorney-in-fact "1) the power 'to demand, sue for, collect, recover and receive all debts, monies, interest and demands whatsoever now due or that may hereafter be or become due to me [the principal] (including the right to institute legal proceedings therefor)' . . . ." *Wellner*, 533 S.W.3d at 193. The litigation authority section of the POA at hand is fundamentally identical.

Our Supreme Court held "the act of executing a pre-dispute arbitration agreement upon admission to a nursing home had nothing at all to do with demand[ing], su[ing] for, collect[ing], recover[ing] and receiv[ing] all . . . demands

-15-

whatsoever and institut[ing] legal proceedings, and even settling existing claims by arbitration or litigation." *Id.* at 193-94 (internal quotation marks and citation omitted). Instead, the "'act' that required authorization was signing an agreement which makes no reference at all to [the principal's] property and instead pertains exclusively to his constitutional rights." *Id.* at 193. *Accord Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 323-24 (Ky. 2015), *overruled on other grounds by Kindred Nursing Centers Ltd. Partnership v. Clark*, 581 U.S. 246, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017):

> Extendicare's position is that the "institute or defend suits" language of the Adams/Whisman POA is a general authorization for engaging in litigation, which implicitly provides the authority to do whatever is incidental to the suit or reasonably necessary to achieve the purpose of the litigation . . . . However, we cannot rationally say that signing an arbitration agreement was "incidental to" a claim concerning Adams' property rights when the specific right, to which the claim is allegedly "incidental," did not exist. An act cannot be "incidental" to something that does not exist or has not happened. An arbitration agreement signed *before* a cause of action exists cannot be "reasonably necessary" to the resolution of that cause. Whisman's execution of the arbitration agreement was not "incidental" to or "reasonably necessary" in the furtherance of any claim at all concerning Adams' property rights.

We are bound by *Wellner*.

As such, we must reject Signature's argument that it is irrelevant that the arbitration agreement here was signed prior to the existence of any dispute

-16-

between Simcoe and Signature. To the contrary, the signing of an arbitration agreement prior to the eruption of a dispute is a linchpin of *Wellner*. In fact, the Court specifically held that POA would have authorized the attorney-in-fact to submit an already *pending* dispute to arbitration but did not authorize the agent to agree to arbitrate disputes which had not yet arisen. *Wellner*, 533 S.W.3d at 193.

Indistinguishable POAs must be construed indistinguishably. Therefore, it is plain that the "demand and sue" clause of the POA at hand did not authorize Lancaster to sign an optional, pre-dispute arbitration contract for Simcoe.

Turning to the healthcare clause, the POA authorized Lancaster to "act as [Simcoe's] agent to make health care decisions for me if and when I am unable to make my own health care decisions." The POA also authorized Lancaster to "sign forms necessary to carry out those decisions." *Id.*

First, it is unclear whether Simcoe was unable to make his own healthcare decisions. Second, our Supreme Court has held that signing an optional arbitration agreement is not a healthcare decision. *Ping*, 376 S.W.3d at 593; *Patton*, 651 S.W.3d at 769. Third, Lancaster was only authorized to sign forms "necessary to carry out those [healthcare] decisions[,]" but the arbitration agreement was not *necessary* since it was wholly optional. The healthcare decision-making powers granted to Lancaster did not authorize her to sign an optional, pre-dispute arbitration agreement on Simcoe's behalf.

*Patton*, *supra*, relied upon by Signature, is materially distinguishable because the arbitration agreement in that case was mandatory. 651 S.W.3d at 762. Our Supreme Court emphasized the distinction between an attorney-in-fact's authorization to sign a mandatory arbitration agreement versus an optional one:

> Because Tommy granted his agent all powers as are necessary or desirable to provide for his care, which would encompass Tommy's admission into a nursing home when he was no longer able to physically care for himself, and because Signature *required* a facility resident or his agent to agree to arbitration of future disputes, we are presented with a circumstance different from, but acknowledged in, *Ping*. Here, in accordance with *Ping* and its expressed principles of agency, we apply the rule that when an agreement to arbitrate is presented as a condition of admission to a nursing home, unless otherwise agreed, a power of attorney expressing general authority to make necessary health care decisions includes the incidental or reasonably necessary authority to enter that agreement. In light of Kenneth's authority to sign a necessary, non-optional arbitration agreement in order to obtain Tommy's admittance into Signature's facility, we must conclude the Arbitration Agreement is valid and enforceable. Thus, we find *Ping*'s guidance dispositive of this issue, albeit not in Kenneth's favor.

*Patton*, 651 S.W.3d at 770 (emphasis in original).

Finally, we reject Signature's arguments that the POA's residual powers clause authorized Lancaster to sign the optional arbitration agreement on Simcoe's behalf. Specifically, sections eleven and twelve of the POA provide in relevant part that Lancaster had the authority "[t]o do and perform all acts necessary or incidental **to the carrying out of the powers conferred**" and "to do

any and all acts **as set forth above** as fully as I [Simcoe] could do if I were personally present . . . ." (emphasis added). Contrary to Signature's arguments, those clauses expressly authorized Lancaster to only perform acts necessary or incidental to the "powers conferred" or "set forth" elsewhere in the POA. As we have discussed, the remainder of the POA did not confer upon Lancaster the power to sign an arbitration agreement on Simcoe's behalf. Moreover, the ability to sign an arbitration agreement was not "set forth above" in the residual powers clauses.

Other cases cited by Signature are distinguishable. For example, we held that a POA which gave the attorney-in-fact the vast authority to "generally do and perform for [the principal] all that I may do if acting in my own person" was sufficient to allow the attorney-in-fact to sign an optional arbitration agreement on behalf of the principal. *Richardson*, 581 S.W.3d at 591 (bold and all caps omitted). The POA at hand does not contain similarly sweeping language.

"Regardless of the nature of the power conferred, POAs will be given a strict and narrow interpretation." *Golden Gate National Senior Care, LLC v. Dolan*, 579 S.W.3d 874, 879 (Ky. App. 2019). Here, "[t]he express grant of authority and the express limitations on that authority renders the . . . POA insufficiently broad to confer the power on [Lancaster] to bind [Simcoe] to an [optional, pre-dispute] arbitration agreement." *Id.* at 880. Therefore, the trial court correctly denied Signature's motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, the Hardin Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

A. Pete Pullen
Shem D. Beard
Louisville, Kentucky

BRIEF FOR APPELLEES:

Edmund J. Benson
Stephen F. Soltis
Lexington, Kentucky